UNION BANK
*v.*
BEATTY.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## SUCCESSION OF LOUIS DUFOUR.

| 10 | 391 |
|----|-----|
| 48 | 560 |
| 49 | 1413 |
| 10 | 391 |
| 115 | 705 |

Since the late treaty between the Emperor of the French and the United States, French citizens are exempt from the tax of ten per cent. on successions in this State, going in whole or part to persons not being domiciliated in this State, and not being citizens of any other State or territory of this Union.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *Benjamin, Bradford & Finney*, for appellees. *W. W. King*, and *H. C. Miller*, for appellants.

*Maurian*, for the French Consul, who intervenes in the suit:

INTERVENTION OF A. ROGER, FRENCH CONSUL IN NEW ORLEANS.

The French Consul in New Orleans founds his right to intervene in this case, upon the 4th Article of the Consular Convention between his Majesty, the Emperor of the French and the President of the United States, dated Washington City, the 23d of February, 1853.

He relies on the 7th Article of said Convention, to repel the attempt of the Treasurer of the State of Louisiana to burden the French heirs of successions' residing in France with the tax of ten per cent. imposed by the 4th Section of the Act of the Legislature of 1842, entitled: An Act to increase the revenue of the State," on all sums, or the value of all property, which may accrue to foreign heirs in successions opened in this State.

He contends that so far as Frenchman are concerned, the said 4th Section of the Act of 1842, cannot be put into execution without violating the aforementioned Article of the Convention of February 23d, 1853.

In support of his position he relies:

1. On the 6th Article of the Constitution of the United States, Par. 2, which says:

"The Constitution and the Laws of the United States, which shall be made in pursuance thereof, and the Treaties made or which shall be made under the authority of the United States, shall be the Supreme Law of the Land, and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."

2. On the decision in *Ware* v. *Hylton*, 3 Dallas, 199, in which the Court say: " A Treaty under the Constitution, being the Supreme Law of the Land, operated as a repeal of all State laws previously enacted, inconsistent with its provisions."

3. On the decision in *Lessee of H. Gordon* v. *Kerrgal*, 1 Washington, C. C. R. 322. " The stipulations in a treaty between the United States and a foreign power, are paramount to the provisions of the Constitution of a particular State."

4. On the decision in *The United States* v. *Aredondo*, 6th Peters, 710—"By the stipulations of a Treaty are to be understood its language and apparent intention, manifested in the instrument, with a reference to the contracting parties, the subject matters, and the persons on whom it is to operate.

5. On the principle laid down in the same case, page 738, "Where a treaty is executed in two languages, each the language of the contracting parties, both parts of the treaty are original, and both are intended to convey the same meaning."

6. On the case of *Chirac* v. *Chirac*, 2d Wheaton, 259, in which the questions involved in the present case are all involved and are elaborately discussed, and all the principles applicable to the same, fully laid down. .

The undersigned counsel begs leave to call the attention of this honorable court to the wording in both languages of the 7th article of the treaty on which we rely; and it will be perceived, that in the French part of said section, when speaking of the disposition which Frenchmen may make of their property, the words "*Comme les habitans eux-mêmes*," are used, when the English part uses the expressions, "*Just as those citizens themselves.*" Now, if we apply the principles laid down in the case of the *United State* v. *Aredondo*, above quoted, and especially if we reflect that the 7th article of the treaty must have been proposed by the French negotiator of the treaty, inasmuch as in France there existed no law imposing discriminating duties on successions accruing to Americans; that, therefore, the word *habitans* (inhabitants) was properly inserted instead of the word *citoyens*, which would have been the real equivalent of the word *citizens* in the article : it is not necessary to know as the undersigned counsel does positively know, that the 7th article of the treaty had for its express purpose of exonerating French heirs residing abroad from the operation of the 4th section of the Louisiana Law of 1842. And it follows clearly that French subjects are not placed in the situation of Louisianians residing abroad for more than two years, (as determined by this court in the *Succession of Poydras*,) but in the situation of *inhabitants* or residents of Louisiana called to a succession opened in Louisiana.

The 7th article of the treaty exempts the citizens of each country from paying any greater tax or impost upon successions devolving to them, than citizens of the country in which the succession was opened. This is to be construed in the most favorable sense—that sense which includes the great mass of the citizens of the country.

SLIDELL, C. J. *Louis Dufour*, a subject of France, died at Mobile, in the State of Alabama, on the 14th August, 1853. He possessed at the time of his death thirty-five shares in the stock of the Bank of Louisiana. A curator of his succession was appointed in Louisiana, who having converted the assets into cash, filed a tableau of distribution, in which a sum of $496 30 was reserved for the State of Louisiana, as a tax of ten per cent under the statute of 1842, which enacts, "that each and every person not being domiciliated in this State, and not being a citizen of any other State or Territory of this Union, who shall be entitled, whether as heir, legatee or donee, with whole or any part of the succession of a person deceased, whether such person shall have died in this State or elsewhere, shall pay a tax of ten per cent. on all sums, or on the value of all property which he may actually receive from said succession, or so much thereof as is situated in this State, after deducting debts due by said succession," a tax which in the case of the *State* v. *Poydras*, as correctly said by the appellant, was held in view of the legislation in *pari materia*, to apply even to heirs, citizens of Louisiana, resident in a foreign country.

The enforcement of the tax was resisted by *Jean Baptiste* and *Marie Jeanne Dufour*, who are admitted to be "heirs of the deceased and French citizens residing in France." The District Judge ordered the charge for the tax to be stricken from the tableau, and the Treasurer of the State of Louisiana has taken this appeal.

The Court being of opinion, that the rights of the said heirs, vested after the recent Consular Convention between the United States of America and His Majesty, the Emperor of the French, went into effect; that by a reasonable and just interpretation of the terms of said Treaty, the exemption from taxation,

for which its Seventh Article provides, applies to the present case; that the said provision of said Treaty was within the constitutional power of the President and Senate of the United States, that said provision being constitutionally valid must be obeyed as supreme law; that consequently the statute of Louisiana has become *pro tanto* inoperative during the continuance of said Treaty.

SUCCESSION OF
DUFOUR.

It is therefore decreed that the judgment of the District Court be affirmed.

The other Justices concurring, except Mr. Justice OGDEN, who dissents.