Statement of the Case.
NICHOLLS, J.
The plaintiff, a corporation created and existing under the laws of the state of New York, appearing in the suit through its duly authorized agent in the city of New Orleans, alleged:
That it is a corporation engaged in the business of life insurance in various portions of the United States, and its domicile is in the city of New York, where its general or home offices are situated and its officials reside. That it has an office in the city of New Orleans, where it is represented by subordinate managers only. That, in accordance with law, in the month of January, 1904, to wit, on or about the 21st day of January, 1904, it duly filed with the board of 'assessors for the parish of Orleans its sworn statement of all the property owned by it subject to taxation under the laws of this state. That, notwithstanding the fact that petitioner had made a true return of its taxable property to the said board of assessors, said board did, nevertheless, proceed to and did assess petitioner upon property not owned or held by it, or any of its officers, in the state of Louisiana, and said board, despite the due and seasonable protest of petitioner, did make an erroneous, illegal, and void assessment on the following, to wit, $10,000 credit, money loaned, etc., $10,000, money in possession, etc. Petitioner averred that it did not have at any time during the current year, on hand or on deposit within the state of Louisiana, funds exceeding the sum of $1,500,- as set forth in their sworn return. That the assessment in the sum of $10,000, made by said board on account of credits, money loaned, etc., was illegal, null, and void, for the reason that any credits, bills receivable, or moneys loaned by and due petitioner are not located and payable in this state, but are located and payable and taxable only at the domicile of petitioner, and are not subject, under the Constitution of the United States and the laws of this state, to taxation by the state of Louisiana, and that said assessment by the board of assessors was an attempt to extend the taxing privilege of the state of Louisiana beyond the territorial jurisdiction thereof, and constituted a taking of property without due process of law, in violation of the fourteenth article of amendment of the Constitution of the United States, which this petitioner expressly pleaded and claimed the benefit of.
That in accordance' with the statutes made and provided petitioner duly and seasonably applied to said board of assessors and to the revision committee of the city council for the *364 cancellation of said illegal assessment, and for the reduction of said assessment of money on hand to the amount returned, under oath by this petitioner to the board of assessors. That the said board of assessors, upon application, reduced the said amount of $10,000, assessed to petitioner as money in possession, to the sum of $7,500, instead of to $1,500, as prayed, but persisted in assessing petitioner with the sum of $10,000 for credits, bills receivable, etc.
That petitioner thereupon made a legal tender of the sum of $46 to the treasurer of the city of New Orleans, being in full of the amount of taxes legally due by it for the current year, which tender was refused. That it had been notified by the said treasurer and by John Fitzpatrick, State Tax Collector for the First district, to pay the taxes based upon said illegal assessment, and that they would impose penalties and seize the property of petitioner unless enjoined and restrained by this honorable court. In view of the premises, petitioner prayed that the city of New Orleans through its proper officer, the board of assessors, through its proper officer and John Fitzpatrick, the State Collector for the First district, be duly cited to appear and answer hereto, and that, after due proceedings had, there be judgment in favor of petitioner and against said defendants, decreeing that the assessment against petitioner in the sum of $10,000, on account of credits, money loaned, etc., be declared to be null and void, and that the assessment against petitioner, on account of moneys in hand, etc., be reduced to the sum of $1,500, and that the defendants, and each of them, be restrained and prohibited from collecting or áttempting to collect any taxes based upon said illegal assessment, and petitioner prayed for all costs and for general relief.
The board of assessors and State Tax Collector filed an answer in which they pleaded the general issue, and prayed that plaintiff’s demand be dismissed. They prayed that they have judgment for 10 per cent, attorney’s fees on the aggregate amount of the taxes and penalties involved in the case until paid, or so much thereof as might be named for the court and for all and general relief.
The city of New Orleans pleaded the general issue, and prayed that plaintiff’s demand be dismissed, and that there be judgment in .its own favor.
The district court declared that the law and the evidence were in favor of the plaintiff and against the defendants, and for the reasons assigned in open court in the written opinion it rendered judgment in favor of plaintiff.
The judgment adjudged' and decreed that there be judgment in favor of plaintiff, the Metropolitan Life Insurance Company of New York, and against the defendants, the city of New Orleans, the board of assessors for the parish of Orleans,' and John Fitzpatrick, State Tax Collector for the First district of New Orleans, decreeing and ordering that the assessment for the year 1904, against the plaintiff company on moneys in hand, etc., be reduced to the sum of $4,000, and further decreeing the assessment for said year against said company in the sum of $10,000 on account of credits, money loaned, etc., to be null and void.
It further ordered that said defendants, and each of them, be, and they are hereby, restrained and prohibited from collecting or attempting to collect any taxes based upon said illegal assessment and that defendants pay all costs of this suit.
The-written reasons were as follows:
This is an action for reduction of assessment on money in possession, on deposit, etc., and for the cancellation of an assessment upon credits, money loaned, bills receivable, etc.
*365 The evidence shows, and it was admitted at the bar by all counsel, that the average of money In possession and on deposit by plaintiff does not exceed $4,000, and that item ought therefore to be reduced accordingly.
The evidence also shows, and it is not disputed, that the only “credits, money loaned, and bills receivable” belonging to plaintiff, and intended to be taxed, consist of loans made to their policy holders in this state, and evidenced by their notes secured by pledge of its own policies, all of wbicb as soon as executed are transmitted to the home office in the city of New York, and are returned to this city only for purposes of collection or renewal.
The authority under which it is proposed to assess and tax these notes is the seventh section of Act No. 170 of 1898, the last clause whereof reads as follows: * * * “And all bills receivable, obligations or credits arising from business done in tbis state are hereby declared assessable within this state and at the business domicile of said non resident, his agent or representative.”
This section is identical in terms with the corresponding section of Act No. 106 of 1890, a statute which stood unrepealed when the Supreme Court of this state declared, substantially in Liverpool, etc., Ins. Co. v. Board of Assessors, 44 La. Ann. 760, 11 South. 91, 16 L. R. A. 56, that “no legislative power existed to change the situs of debts due to nonresidents,” unless such debts had assumed some “concrete form” in the evidence thereof, and “such evidences are situated in the state,” language tantamount to a declaration that this provision of the statute was repugnant to some higher law; i. e., was “unconstitutional.” Under this high authority, then, X am constrained to declare that so much of the seventh section of Act No. 170 of 1898 as attempts to make assessable in this state any bills receivable due to nonresidents, unless the same are “situated in the state,” is unconstitutional, and therefore void, and any assessment made In pursuance thereof is therefore null.
The defendants appealed.
Opinion.
In the brief on behalf of the insurance company the statement is made that on the trial defendant’s counsel made such admissions as reduced this cause to the sole question of the legality and unconstitutionality of the attempted tax on credits, money loaned, etc.
“The plaintiff is a corporation under the laws of New York. It had duly complied with the statutes of the state regulating the entry and doing of business by foreign insurance companies, and has and maintains an office in the city of New Orleans. Following the usual notice on January 21, 1904, it filed its sworn return of property owned by it and subject to taxation in this state. The board of assessors proceeded to alter this section in two particulars. It assessed to the plaintiff the sum of $10,000 as money in possession or on deposit and $10,000 as credits, moneys loaned, and bills receivable.
“On the 1st of January, 1904, the plaintiff had outstanding loans made to residents ‘in Louisiana amounting to about $10,000. Between the 1st of January and the 1st of April, 1004, the plaintiff loaned to persons in Louisiana the sum of $1,492.
“The method of making these loans was that described by Mr. Mcilardy, the resident superintendent :
“Q. I want you to describe to the court the method by which a loan is applied for to the company and passed on by the company, and how the contract is accepted.
“A. The policy holder applies to me for a loan on his policy. I take the application, and X advise the company and procure the necessary note.
“Q. Where do you procure that note from?
“A. From the home office at New York.
“Q. Who passes on the application?
“A. The home office.
“Q. In case they decide to accept the loan, they advise you?
“A. Yes.
“Q. Then what do you do?
“A. I take the policy, with the note, and send it to the home office, and, if they pass upon it approvingly, the check is sent to me personally.
“Q. Where were the notes and the policy securing the notes representing this $10,000 on the 1st day of January, 1Ó04? In other words, where were they located?
“A. In New York, sir.
“Q. Are those notes always located in New York?
“A. Yes, sir.
*366 “Q. That is to say, they are sent by you to New York, when?
“A. Immediately upon the loan being completed.
“Q. Do you in any case retain for more than 24 or 49 hours the evidence of indebtedness in your office?
“A. No, sir.
“Q. In other words, within 24 or 48 hours the notes and policies go to the home office in the course of business?
“A. Yes, sir.”
In the syllabus to the brief of the appellant the following among other propositions are laid down:
“(1) The doctrine of ‘Mobilia sequuntur personam’ is subject to so many exceptions that it can be applied only in the simplest cases. Story on Conflict of Laws (2d Ed.) p. 414, § 334; New Orleans v. Stemple, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; Bristol v. Washington County, 177 U. S. 133, 20 Sup. Ct. 585, 44 L. Ed. 701; Blackstone v. Miller, 188 U. S. 203, 23 Sup. Ct. 277, 47 L. Ed. 439.
“(2) It can never prevail in the face of positive law to the contrary. Norris v. Mumford, 4 Mart. (O. S.) 20; Ramsey v. Stevenson, 5 Mart. (O. S.) 23, 12 Am. Dee. 468; Fisk v. Chandler, 7 Mart. (O. S.) 24; Beirne v. Patton, 17 La. 590; United States v. Bank of U. S., 8 Rob. 414; Offut v. Acheverra, 24 La. Ann. 93; Succession of Caballero, Id. 579; Freret v. Freret’s Heirs, 31 La. Ann. 509. Especially when there is a positive tax law to the contrary. State v. Martin, 2 La. Ann. 667; State v. Poydras’ Heirs, 9 La. Ann. 166; Succession of Dufour, 10 La. Ann. 391; Succession of Prevost, 12 La. Ann. 577. The decisions in Meyer v. Pleasant, 41 La. Ann. 646, 6 South. 258, Barber Asphalt Co. v. City of New Orleans, 41 La. Ann. 1017, 6 South. 794, do not controvert that principle, because under the tax acts of 1886 and 1888 there were no provisions in conflict with the doctrine of ‘Mobilia sequuntur personam.’
“(3) The jurisprudence of the courts of other states establish this as one of the exceptions to the maxim. Alvany v. Powell, 55 N. C. 51; Catlin v. Hull, 21 Vt. 161; Smith v. Burley, 9 N. H. 423; State v. St. Louis County Court, 47 Mo. 600; People v. Home Ins. Co., 29 Cal. 533; City of St. Louis v. Wiggins Ferry Co., 40 Mo. 580; Wilcox v. Ellis, 14 Kan. 602; Board of Sup’rs of Tazewell County v. Davenport, 40 Ill. 198; Douglas v. Mayor, etc., of City of New York. 2 Duer, 110; Silsbury v. McCoon, 3 N. Y. 390, 53 Am. Dec. 307. And it has also been maintained in State ex rel. Mechanics’ & Traders’ Ins. Co. v. Board of Assessors, 47 La. Ann. 1544, 18 South. 519; Bluefields Banana Co. v. Board of Assessors, 49 La. Ann. 49, 21 South. 627; Parker v. Strauss, 49 La. Ann. 1175, 22 South. 329. The decision in Railey v. Board of Assessors, 44 La. Ann. 765, 11 South. 93, is not sustained by the authorities cited therein.
“Tappan v. Merchants’ Nat. Bank, 19 Wall. 499, 22 L. Ed. 189, and United States v. Erie Ry. Co., 106 U. S. 333, 1 Sup. Ct. 223, 27 L. Ed. 151, in effect overrule In re State Tax on Foreign-Held Bonds, 15 Wall. 300, 21 L. Ed. 179. State ex rel. Abbott v. Hicks, 44 La. Ann. 776, 11 South. 74, while seeming to oppose our contention, yet only modifies it, while Clason v. City of New Orleans, 46 La. Ann. 1, 14 South. 306, is against it.
“(4) Investments by a nonresident of the state are subject to taxation under the laws of the state when made by a resident agent who is employed to invest money at whose office the loans are made payable, and to whom the notes taken for loans are returned for collection. Bristol v. Washington County, 177 U. S. 133, 20 Sup. Ct. 585, 44 L. Ed. 701; New Orleans v. Stemple, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174.
“(5) Whether our contention hereinbefore set forth be correct or not, there can be no serious question that a state can tax a foreign corporation, especially a foreign insurance company, to any extent or in any manner it sees proper, for the privilege of doing business in the state. 6 Thompson’s Commentaries on Corporations, §§ 8087 and 7900, and authorities there cited. 12 Cook on Corporations (4th Ed.) p. 1080, and authorities there cited. Cooley on Taxation, 387; 1 Desty on Taxation, 372, 229; Burroughs on Taxation, 151; Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 573, 19 L. Ed. 1029; Oliver v. Liverpool & London Life & Fire Ins. Co., 100 Mass. 531; Attorney General v. Bay State Min. Co., 99 Mass. 148, 96 Am. Dec. 717; Ducat v. Chicago, 10 Wall. 415, 19 L. Ed. 972; Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148; Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 12, 24 L. Ed. 708; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739 28 L. Ed. 1137; Robbins v. Shelby County Taxing Dist., 120 U. S. 496, 7 Sup. Ct. 592. 30 L. Ed. 694; Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1380, 32 L. Ed. 311; Horn Silver Min. Co. v. New York, 143 U. S. 314, 12 Sup.. Ct. 403, 36 L. Ed. 164; Adams Exp. Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; Henderson Bridge Co. v. Kentucky, 166 U. S. l54, 17 Sup. Ct. 532, 41 L. Ed. 953.”
On the trial of the case it was admitted that the State Tax Collector threatened a seizure in this case and would proceed unless prevented by order of court. On cross-examination of Mr. MeHardy, the local superintendent, he was questioned as to how the policy holders obtained loans and method of proceedings in respect to their application, and testified as follows: u
*367 “Q. To whom is application made — to you?
“A. Yes, sir.
“Q. What do you do after that?
‘‘A. I forward the application to the home office, with the request that the loan he granted them (if I consider it all right), and that the necessary loan note be forwarded and the note is sent to me.
“Q. Where is the note executed?
“A. Here, as far as the signatures are concerned.
“Q. What do you do with the note?
“A. I take the policy, attach it to the note, with any letter necessary in the case, and forward it to the home office.
“Q. Where is the interest paid on those notes?
“A. Here, to me.
“Q. And the interest is remitted by you?
“A. Yes, sir.
“Q. And when the note is liquidated, paid in full — how is that managed?
“A. It is invariably paid to me.
“Q. Whom is payment made to for final - settlement of the note? In the same way as the interest?
“A. Yes, sir.
“Q. And the note is sent back to you, and by you delivered to the owner?
“A. Yes, sir.
“Q. How do you receive remittances to pay those borrowers?
“A. By check.
“Q. On what bank?
“A. The National Shoe & Leather Bank of. New York.
“Q. How about renewals for a time when the time expires?
“A. The borrower has the right to take up the note when due or to pay interest.
“Q. Have you had occasion to sue, in the last few years in these courts, any of those who refused to pay you?
“A. No, sir.”
Counsel of appellants say:
“The sum and substance of the testimony is that the plaintiffs receive about $10,000 a year on loans, which they remit to the home office, and they receive $7,000 per week in cash as premiums.
“On this showing plaintiffs contend that the tax cannot be assessed on the credits and money loaned on the principal of ‘Mobilia sequuntur personam.’ ”
In Bluefields Banana Company v. Board of Assessors, reported in 49 La. Ann. 48, 21 South. 627, the rule “Mobilia sequuntur personam” was declared to be a fiction of the law not resting of itself upon any constitutional foundation, and which gives ■way before express law destroying it in any .given case where constitutional requirements do • not stand in the way. Answering the claim asserted that the taxation provided for in that case could not be made effective, the court said: “Conceding that proposition true, it did not furnish a test as to its constitutionality.” We see no reason to alter the views so announced. We believe they are in accord with generally accepted judicial opinion. In Blackstone v. Miller, 188 U. S. 206, 23 Sup. Ct. 277, 47 L. Ed. 439, the Supreme Court of the United States, referring to the maxim “Mobilia sequuntur personam," said that “when logic and the policy of the state conflict when a friction due to historical tradition, the friction must give way.”
There can be no doubt that the seventh section of the act of 1898, quoted in the judgment of the district court, announced the policy of the state touching the taxation of credits and bills of exchange representing an amount of the property of nonresidents equivalent or corresponding to said bills or credits which was utilized by them in the prosecution of their business in the state of Louisiana. The evident object of the statute was to do awaf with the discrimination theretofore existing in favor of nonresidents as against residents, and place them on an equal footing. The statute was not arbitrary, but a legitimate, exercise of legislative power and discretion.
It is not contested that the state has the right in consenting to allow foreign corporations to carry on business within her borders to attach such conditions to such consent as she pleases. These foreign corporations are under no obligation to accept the terms; but, if they do accept them and carry on business in the state, they must comply with them. They cannot avail themselves of the benefits of the consent and repudiate the obligations attached thereto. The conditions of consent may refer to the matter of taxation, as well as to anything else. When foreign corporations come into the state for *368 business purposes, they are constructively ■present in the state, and voluntarily place themselves within the jurisdiction of the state and accept and subject themselves to the laws thereof.
As was said in Bluefields Banana Co. v. Board of Assessors, these foreign corporations do business in Louisiana, transact their business precisely as do resident business men and corporations. They derive all the advantages to be obtained from the state and city governments which residents receive, and we see no reason why they should not be taxed as claimed, unless there be insuperable legal objections in the way.
This language was approvingly quoted in Comptoir National v. Board, 52 La. Ann. 1322, 27 South. 801. Taxation is the correlative of protection. The evidence in the present ease established the fact that the notes referred to were signed by the borrowers in the state of Louisiana and delivered there to the local superintendent of the company, who turned over to them in Louisiana the amount borrowed of the company.
As stated in the Comptoir National Case:
“The particular manner or instrumentality by which the moneys used by the company in the course of its continuing business in Louisiana was obtained was a matter of no moment or significance in the consideration of the question we are now dealing with. The company, beyond question, loaned money in Louisiana, which, for the purposes of the loan, were the company’s moneys, and the borrowers gave their own notes to the company to represent the moneys received from the company. The notes represent an equivalent amount of money of the company in Louisana.”
The moment these moneys were received in Louisiana, and there delivered to the company’s local superintendent, the taxing power attached against the company, and immediately after the delivery of the moneys to the borrowers the tax struck the notes delivered to the superintendent in representation of the moneys, regardless of what disposition might be made of them subsequently. It is a mistake to suppose that because the tax debtor might, in order to evade the payment of the tax, or for any other reason, remove the notes beyond the limits of the state, the tax would be destroyed. An evasion would not be tolerated. It would not be necessary for the state to go beyond its limits for the enforcement of the tax against the company because the notes should have been taken outside the state. Article 233 of the Constitution declares:
“Taxes on movables shall be collected by seizure and sale by the tax collector of the movable property of the delinquent to pay the tax.”
Sale of such property shall be made at public auction without appraisement, after ten days’ advertisement made within ten days from date of seizure and shall be absolute and without redemption. If the tax collector can find no corporeal movables of the delinquent to seize he may levy on corporeal rights by notifying the debtor thereof or he may proceed by summary rule in the courts to compel the delinquent to deliver up for sale property in his possession or under his control.
The state would have power over the person of the debtor through service on their local superintendent. In Blackstone v. Miller, the court said that power over the debtor gave jurisdiction, and that matter could be disposed of, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of the power of the state over the person of the debtor.
There was no reason for or justice in the withdrawal by the company of the notes, and the holding of them in its vaults until required in Louisiana for the purpose of their payment as it is declared was done. Their value was in no manner enhanced by that fact. Their value continued to rest in the fact that the notes were secured as to payment by the property of the debtors. in Louisiana, and through the right to their enforcement under Louisiana law in the *369 courts of the state. The investment by the company was as to value due to nothing in New York, but entirely to what was done in Louisiana. It is claimed by the plaintiff that the law of Louisiana takes its property from it without due process of law, but it is not pointed out in what way there was not due process of law, and we fail to see wherein there was not. Appellant does not urge, and could not urge that it did not obtain the equal protection of the law, for what it is now seeking to preserve is the greater protection which had been accorded foreign corporations over residents of Louisiana up to the time that the statutes were changed.
We are of the opinion that the judgment appealed from, adjudging and decreeing the statute to be unconstitutional, is erroneous. We hereby hold and decree the statute to be constitutional.
For the reasons assigned, it is ordered, adjudged, and decreed that, in so far as the judgment appealed from decrees the assessment against the plaintiff in the sum of $10,000 for the year 1904, on account of credits, moneys loaned, etc., to be null ana void, and decrees the unconstitutionality of the law upon which it is based, the same be annulled, avoided, and reversed, and that, in so far as such judgment fails to award to the defendants the attorney’s fees allowed by law, the same be amended to the extent that there now be judgment in favor of the defendants, the Tax Collector, and against the plaintiff, condemning the latter to pay, in addition, to the tax to be recovered, Í0 per cent, on that portion thereof with respect to which no reduction of assessment has been obtained in this proceeding.
It is further ordered, adjudged, and decreed that in all other respects the judgment appealed from be affirmed, the plaintiff to pay the costs of appeal.