(46 South. 122.)

No. 16,691.

GENERAL ELECTRIC CO. v. BOARD OF ASSESSORS et al.

(March 16, 1908.   Rehearing Denied April 13, 1908.)

TAXATION—SITUS FOR TAXATION—DEBTS DUE NONRESIDENT.

Debts due on open account to a nonresident are taxable at the domicile of the debtor, when they have arisen out of a business carried on in the taxing state and form part of the capital of the business.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 190–195.]

Breaux, C. J., and Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the General Electric Company against the board of assessors and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Hall & Monroe, for appellant. George Hitchings Terriberry, for appellee board of assessors. Francis Charles Zacharie (Harry Prentiss Sneed, of counsel), for appellee state tax collector. Henry Garland Dupré, Asst. City Atty., for appellee city of New Orleans.

PROVOSTY, J. This is a suit to set aside an assessment. The plaintiff, the General Electric Company, is a New York corporation, with its domicile at Schenectady, N. Y. It has in New Orleans a local agent and an office, and also a warehouse, where it keeps a stock of goods in its line of business. From this warehouse it sells goods for cash, and also on a credit. The credit sales, however, are made only to such customers as have had a line of credit allowed them by the home office in Schenectady; the local agent being without authority to decide whether to extend credit or not. The volume of the cash business is not given. The number of credit customers is fixed at ap-

proximately 30 in the city of New Orleans and 50 in other parts of the state, with an average line of credit of $1,500 to each, and one other customer in the city of New Orleans with a line of $15,000 or more. The agent keeps no books, or accounts, or records, except copies of letters. All billing is done from the home office, and also all collections. When a customer is delinquent in his payments, however, the agent is required to jog his memory or prod him. The receiving of payments does not necessarily enter into the agent's functions. If, however, payment is tendered him, he receives it and at once transmits the money. When the payment is by check, he transmits the same check that is given him, even though on a local bank. For the payment of freights and other minor local expenses he keeps a bank account of not exceeding $500. He solicits business. He is without authority to approve contracts, but bargains for them, and draws them up, and transmits them to the home office for acceptance or rejection. His only further connection with the contracts which he thus transmits is in case any payments due under them are not forthcoming, when he is required, as in the case of credit sales made from the local warehouse, to look up the customer and ascertain the cause of his tardiness.

The revenue law (Act No. 170, p. 346, of 1898, § 1) enumerates among the property subject to taxation "all rights, credits, bonds, and securities of all kinds, promissory notes, open accounts, and other obligations," and after a long and exhaustive enumeration of every possible and imaginable kind of property, rights and credits, it concludes with the following generalization:

"And all movable and immovable, corporeal and incorporeal articles or things of value, owned and held and controlled within the state of Louisiana by any person in any capacity whatsoever."

Section 7 of the same act, after declaring that "it is made the duty of the tax assessors throughout the state to place upon the assessment list all property subject to taxation," proceeds as follows:

"Provided, further, that in assessing mercantile firms the true intent and purpose of this act shall be held to mean, the placing of such value upon the stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, etc., as will represent in their aggregate a fair average of the capital, both cash and credit, employed in the business of the party or parties to be assessed. And this shall apply with equal force to any person or persons representing in this state business interests that may claim a domicile elsewhere, the intent and purpose being that no nonresident, either by himself or through an agent shall transact business here without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this state are hereby declared assessable within this state, and at the business domicile of said nonresident, his agent or representative. It shall be the duty of the assessor to examine into and to acquaint himself with the insurance carried upon the property, and in determining the value of said stock or assets the average amount of insurance carried by the assured during the twelve months preceding the date of valuation of same shall be by the assessor considered in determining the value of said property.

"Every insurance company doing business in this state shall, on or before the first day of March in each year, render to the Secretary of State a report, signed and sworn to by its president and secretary, of its condition upon the preceding thirty-first day of December, which shall include a detailed statement of its assets and liabilities on that day, the amount and character of business transacted in this state, moneys received and expended during the year and such other information and in such form as he may require."

Section 91 of the same act provides as follows:

"The term 'credit' includes every claim and demand for money, labor, merchandise, and other valuable things. The word 'person' or 'persons,' 'taxpayer' or 'taxpayers,' shall be held to include firms, companies, associations and corporations."

Acting under this statute, the board of assessors of the parish of Orleans, in making the assessment of the plaintiff for the year 1904, added $25,000 for credits on open ac-

count. The credits thus assessed were not any particular credits, but represented the average credits due to plaintiff in the course of the year in its business.

The plaintiff corporation, as already stated, has brought this suit to set aside the assessment. Plaintiff alleges that all its business is done at Atlanta, Ga., where it has a branch establishment, and at Schenectady, N. Y., its home, and that it has no credits in Louisiana for which taxes are due.

If all the credit customers of plaintiff's office and warehouse in the city of New Orleans utilize their line of credit constantly to the full limit (and the probability is that they approximately do, and nothing shows that they do not), the plaintiff has constantly due to it by the residents of this state and arising out of its business done in this state a matter of $135,000. Therefore, by denying that it has any credits in this state' for which a tax is due, plaintiff cannot mean to deny that the credits are due, but simply that they are in this state, or that a tax is due on them.

The first contention of the plaintiff is that the Legislature, by the above-transcribed statute, has not intended to impose a tax upon credits of the kind here in question.

Counsel's first argument in support of this contention is founded on the fact that section 1 of said statute, after naming the different kinds of property intended to be taxed, concludes "and all articles or things of value owned and held and controlled within the state," using the copulative, and not the disjunctive, conjunction, and that "therefore a thing, to be assessed, must be owned and held and controlled within the state of Louisiana."

We assume that counsel mean by this nothing more than that the thing to be taxed must be situated here—a proposition no one will quarrel with. Taken as it is expressed, the argument would mean that a thing situated here—a plantation or a stock of goods, for instance—would not be taxable here unless owned here. Certainly nothing of that kind can be meant.

The next argument in support of the contention that the Legislature has not intended to tax these open accounts is that open accounts are not included among the kinds of property upon which taxes are levied. The best possible answer to this argument is: Read the statute. The word "open accounts" is there printed in plain type among the kinds of property upon which taxes are levied; and in equally plain type the duty is imposed upon the assessor to include "open accounts" in his assessment. Therefore the argument merely says "no" to the plain "yes" of the statute.

Next, counsel say that "open accounts" are required to be taxed only when due to mercantile firms, and that the plaintiff is not a mercantile firm. The plaintiff sells goods for cash and on a credit out of a stock of goods constantly kept replenished, and for all the court knows may be the largest wholesale and retail dealer in its line of goods in the city of New Orleans. If this does not make plaintiff a mercantile concern, it is not easy to conceive what would. But, apart from this, how can counsel say that section 7 of the statute applies only to mercantile firms, when immediately following the first proviso, which in terms applies to mercantile firms alone and requires open accounts to be taxed, comes the second proviso, viz.:

"And this shall apply with equal force to any person or persons representing in this state business interests that may claim a domicile elsewhere," etc.

Moreover, this section 7 is the general law prescribing the duties of assessors, and necessarily applies alike to all persons and all things taxable.

There can be no serious question but that the Legislature has provided that credits due upon open accounts arising out of business

done in this state by nonresidents shall be taxed; and there can be no serious question but that the open accounts in this case have arisen out of business done in this state. The only question must be whether the Legislature has the power to tax credits of that kind.

If it had not, all we would have to say would be that it was unfortunate that such was the case. For nothing can be more fair or just than that foreigners and foreign corporations should be made to pay the same tax as the resident citizens and local corporations they come in competition with in the business done in this state. The state imposes this tax because of her need of the revenue to be derived from it. She extends to the business the protection of her laws, and seeks to make the business bear its just proportion of the burden of taxation. The situation would be, we repeat, unfortunate, not to say deplorable, if the state were left no choice between having to forego this needed revenue, or else handicapping with this tax the business of her own citizens and home corporations in their competition with foreigners for the business to be done here. It ought to stand to reason that there is nothing in the Constitution of the United States, or elsewhere, to sanction such an impolitic, unjust, unfair, and unequal conclusion; and we think there is not.

The only reason suggested why the Legislature has not the power is that the open accounts are not situated in this state, but at the domicile of plaintiff, their owner, at Schenectady, N. Y., and as a consequence are not taxable in this state.

It will be observed that the reason here suggested presupposes two things: First, that these open accounts are situated somewhere; and, second, that if they were situated in this state they would be taxable in this state.

There can be no doubt of these two propositions. These open accounts have a value, they are legally known as incorporeal things,

and, like all other things, they are situated somewhere. The second proposition is equally clear. It was stated by Chief Justice Marshall in McCullouch v. Maryland, 4 Wheat. (U. S.) 429, 4 L. Ed. 607, in these words:

"All subjects over which the sovereign power of a state extends are objects of taxation. * * * It [the power of taxation of a state] may be exercised upon every object brought within its jurisdiction."

See, also, Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 561; Savings & Loan Soc. v. Multnomah Co., 169 U. S. 426, 18 Sup. Ct. 392, 42 L. Ed. 803.

There can be no doubt that these open accounts are actually situated either in Schenectady, N. Y., the domicile of the plaintiff who owns them, or in New Orleans, the domicile of the persons who owe them. In passing, we may note that the fact of these open accounts being taxable at the domicile of the plaintiff would be no reason why they should not be taxable also in Louisiana. Property may be taxed in two jurisdictions. Blackstone v. Miller, 188 U. S. 205, 23 Sup. Ct. 277, 47 L. Ed. 439; A. & E. E. vol. 27, p. 610; Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715. It may be taxable at the domicile of the owner by reason of jurisdiction over the person of the owner, and at its situs by reason of jurisdiction over it. See, however, Union, etc., Co. v. Kentucky, 199 U. S. 194, 26 Sup. Ct. 36, 50 L. Ed. 150.

By being situated in this state for the purpose of taxation is meant situated in this state indefinitely—that is to say, as part of the bulk of the property of the state—and not merely transiently, as mere objects of commerce that have not yet reached their destination. But no difficulty arises in that connection, for what has been assessed in this case is the average amount due to plaintiff year in and year out in its New Orleans business, and therefore the thing assessed, if it be in this state at all, is in this state indefinitely, and not merely transiently.

Since open accounts due to nonresidents are not taxable in this state unless situated in this state, the Legislature of this state, by imposing a tax upon open accounts which have grown out of business done in this state, has by necessary implication declared that open accounts of that character are situated in this state, or, in other words, has fixed the situs of such open accounts in this state, as far as in its power lies to do so. See, to that effect, among other decisions, State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 671; Pullman's Palace Car Co. v. Penn., 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 618; Metropolitan Life Ins. Co. v. Board of Assessors, 115 La. 707, 39 South. 846, 9 L. R. A. (N. S.) 1240, 116 Am. St. Rep. 179.

The task which plaintiff has undertaken, therefore, is to show that the Legislature of this state has erred in supposing that the open accounts assessed in this case are situated here, or that it has the power to fix their situs here. The task is not an easy one. The situs even of corporeal things is sometimes involved in great uncertainty. The Supreme Court of the United States has divided on the question of the situs of the property of the Adams Express Co. (Sanford v. Poe, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683), and of the coaches of the Pullman Palace Car Co. (Pullman's Palace-Car Co. v. Com., 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 618).

Plaintiff asserts that these open accounts —these incorporeal things—are actually situated at Schenectady, N. Y., and are not actually situated in New Orleans, La. How is plaintiff going to prove that assertion? Of course, plaintiff must not undertake to prove that assertion by means of another assertion. For instance, by the assertion that all movables are situated at the domicile of their owner, or, as the Latin maxim expresses it, "Mobilia sequuntur personam." One assertion cannot prove another. Plaintiff would have to prove that all movables are situated at the domicile of their owner. We know that said maxim cannot serve as a guide in the matter of the taxation of corporeal movables. The goods which plaintiff keeps on hand in its warehouse in New Orleans are situated there for the purposes of taxation. The goods are physically present to indicate their situs. The open accounts growing out of the same business, and representing the price of goods sold out of the same warehouse to persons resident in this state, are incorporeal, and hence as to them the truth or falsity of the assertion that they are situated at the domicile of their owner in New York is not so easily tested. But, when it comes to fixing their situs for the purposes of taxation, is said maxim a safer guide in their case than in the case of the goods?

The test of physical presence failing us in the case of incorporeal movables for ascertaining actual or juridical situs, what other test may we have recourse to? The learned counsel for plaintiff have not suggested a single one for showing that these open accounts are actually situated in Schenectady, N. Y., and not in New Orleans, La. They have contented themselves with the assertion that movables follow the person of their owner, and with citation of decisions founded upon that assertion, and upon absolutely nothing else.

One test of the situation of a thing for the purpose of its taxation is the inquiry: At what place does it receive the protection of the law? The protection of the law and taxation are reciprocal. For the purposes of taxation, a thing, as a general proposition, is situated at the place where it receives the protection of the law. While this is not true where the situs of the thing is merely temporary, it is true where the situs is permanent. Cooley, Taxation (2d Ed.) pp. 1, 19; A. & E. E. vol. 27, p. 581.

Tested by the foregoing, the open accounts involved in this case are situated in Louisiana. Not only they are dependent upon the

laws of this state for their enforcement, but also they receive from the laws of this state the benefit of a lien or privilege upon the thing sold for the security of their payment. These open accounts receive directly no more protection from the laws of New York than from the laws of China.

In the case of Blackstone v. Miller, 188 U. S. 205, 23 Sup. Ct. 278, 47 L. Ed. 444, where a credit was sought to be subjected to an inheritance tax, the Supreme Court of the United States said:

"We shall not stop to discuss this aspect of the case, because we prefer to decide it upon a broader view.

"The transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the state of New York, then New York may subject the transfer to a tax. But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. The principle has been recognized by this court with regard to garnishment of a domestic debtor of an absent defendant. What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. Most of us do not commit crimes, yet we nevertheless are subject to the criminal law, and it affords one of the motives for our conduct. So, again, what enables any other than the very creditor in proper person to collect the debt? The law of the same place. To test it, suppose that New York should turn back the current of legislation, and extend to debts the rule still applied to slander, that 'actio personalis moritur cum persona,' and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party. Leaving constitutional considerations on one side, it is plain that the right of the foreign creditor would be gone.

"Power over the person of the debtor confers jurisdiction, we repeat. And, this being so, we perceive no better reason for denying the right of New York to impose a succession tax owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim, 'Mobilia sequuntur personam,' has no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way."

Other tests of where a thing is situated are: Where may it be seized in the satisfaction of the debts of its owner? Where may actual delivery of it be made in case it is sold? And where is the legal evidence of its existence to be found, in case its existence is denied? In connection with the first of these tests, the Supreme Court of the United States held, in the case of Chicago, etc., R. Co. v. Sturm, 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144, as follows:

"A debt may be attached at the domicile of the debtor, though the creditor's domicile is in another state."

See, also, New Orleans v. Stemple, 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 181; also Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 442, 444.

Our Code of Practice, by articles 245 and 246, expressly provides for the seizure of debts in the hands of the debtor by writs of attachment and fieri facias in a suit against the creditor.

With reference to the second of the above-mentioned tests, that as to the place where actual delivery may be made, our Civil Code (article 2643) provides that the transferee of a credit is possessed of it, as regards third persons, only after notice of the transfer having taken place has been given to the debtor. Of course when the debtor lives in this state, such notice can be given to him only in this state.

The third of the above-mentioned tests, that as to where the legal evidence of the existence of these open accounts is situated, shows equally that these open accounts are situated here, since the only legal evidence of their existence is the testimony of the persons living here, who alone have any personal knowledge of the transactions out of which they have grown.

These open accounts could not be seized by the tax collector or by the sheriff at the home of the plaintiff. If plaintiff sold them, actual delivery of them could not be made there. Plaintiff could not exhibit there any evidence

of their existence. On the other hand, these open accounts could be seized by the sheriff or tax collector here, by garnishment of the debtors. They could be made the basis of the jurisdiction of our courts in a suit brought here against the absentee plaintiff. Actual delivery could be made of them here by serving notice on the debtors. The only available legal evidence of their existence is here, in the persons of the only witnesses having personal knowledge of the transactions out of which they have grown. Now, can it be said that a thing is actually, and not merely fictively, situated at a place where it cannot be seized, or delivered—indeed, where no evidence whatever of it exists; and, e converso, can a thing be said not to be actually situated at a place where it can be seized, and where actual delivery of it can be made? Dealing with a case where the debt was on a note, the Supreme Court of the United States said:

"Now, if property can have such a situs within the state as to be subject to seizure and sale on execution, it would seem to follow that the state has power to establish a like situs within the state for purposes of taxation." New Orleans v. Stemple, 175 U. S. 316, 20 Sup. Ct. 115, 44 L. Ed. 179.

This reasoning applies with equal force to the present case, since the credit in the case is equally "subject to seizure."

The fact that credits against nonresident debtors may be sold at the domicile of the creditor is adduced as proof that such credits are situated at the domicile of the creditor; but that fact only proves that the credits are owned there, not that they are situated there. In like manner a stock of goods, or a plantation, situated in Louisiana, may be sold in New York; but that does not prove that they are situated in New York.

It is also said that a distinction must be made between the credit and the corresponding debt; that the credit is situated at the domicile of the creditor, and the debt at the domicile of the debtor; that the credit is

property, and can be taxed; but the debt is not, and cannot be taxed. But, with all due deference, this is a mere play upon words. The credit and the debt are one thing. When the sheriff seizes the debt under garnishment, he seizes the credit; and the proof of it is that, if the garnishment were to absorb the debt, there would be no credit left.

By fiction these credits are situated at the domicile of their owner in New York; but the taxing power does not deal with fiction. It deals with fact. Sometimes corporations are doing a large business in other states, and own a great deal of property there, while having no property in the state of their domicile. If such were the case with plaintiff, and the state of New York undertook to tax these credits, the reality of the situation would soon be developed in the inability of the state of New York to make its taxes good otherwise than by garnishment process in Louisiana. In the case of Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558, where the state of Connecticut levied a tax upon mortgage bonds owned by a resident of the state, but held and secured in Chicago, Ill., the tax collector was unable to satisfy the tax by recourse against the bonds, and had to seize other property of the tax debtor situated in Connecticut, which had already borne its just share of taxation. If the tax debtor had not had this other property, the tax could have been made good only by proceedings in Chicago against the bonds.

By the foregoing argument it is not intended to deny the taxability of debts at the domicile of the creditor, nor to assert that the situs of a debt follows the debtor wherever he may go, nor even that isolated debts of every kind have a situs at the domicile of the debtor, although this last proposition would be, we are aware, the logical conclusion from the argument. All that it is intended to show is that in the law of taxation—that is to say, according to the reality of things—the maxim "Mobilia sequuntur personam" may be

as misleading with respect to the taxing situs of incorporeal movables as it is with respect to the taxing situs of corporeal movables, and that such a thing is possible as that under certain circumstances a debt on open account should have a situs at the domicile of the debtor. And for this last proposition we have the authority of the Supreme Court of the United States, to which court the determination of such a question naturally belongs. In Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 398, 27 Sup. Ct. 500, 51 L. Ed. 855, that exalted tribunal, speaking of the above-quoted statute taxing these open accounts, said:

"The evident purpose of this law is to lay the burden of taxation equally upon those who do business within the state. It requires that, in the valuation for the purposes of taxation of property of mercantile firms, the stocks, goods, and credits shall be taken into account, to the end that the average capital employed in the business shall be taxed. This method of assessment is applied impartially to the citizens of the state and to the citizens of other states or countries doing business, personally or through agents, within the state of Louisiana. To accomplish this result the law expressly provides that all bills receivable, obligations, or credits arising from the business done in this state shall be assessable at the business domicile of the resident. Thus it is clear that the measure of the taxation designed by the law is the fair average of the capital employed in the business. Cash and credits and bills receivable are to be taken into account merely because they represent the capital, and are not to be omitted because their owner happens to have a domicile in another state. The law was so construed by the Supreme Court of Louisiana, where, in sustaining the assessment, it was said:

"'There can be no doubt that the seventh section of the act of 1898, quoted in the judgment of the district court, announced the policy of the state touching the taxation of credits and bills of exchange representing an amount of the property of nonresidents, equivalent or corresponding to said bills or credits, which was utilized by them in the prosecution of their business in the state of Louisiana. The evident object of the statute was to do away with the discrimination existing in favor of nonresidents as against residents, and place them on an equal footing. The statute was not arbitrary, but a legitimate exercise of legislative power and discretion.'"

Since the above-quoted statute has mentioned open accounts by name among the

kinds of property upon which a tax is levied, and, in prescribing the duties of the assessor, has mentioned open accounts by name among the kinds of property which that officer is to include in his assessment of the property of nonresident persons, firms, and corporations doing business in this state, and since it is an undisputed proposition that a state has the power and right to tax all property of whatsoever kind permanently or indefinitely situated within its limits, and since the assessment in this case is not of transient, or even isolated, credits, but is of the average amount of the credits which the plaintiff has in its permanent business in New Orleans, it would seem the sole question that could arise in connection with the taxability of the credits involved in this case would be that of whether or not they are situated in this state. But a good many decisions, in discussing the taxability of credits, have attached importance to the manner in which the credits are evidenced.

For our part, we are unable to see what the manner in which a credit is evidenced has to do with its taxability. The proposition being conceded that a state has the right to tax all property situated within its limits, the taxability of a credit should depend upon its being situated or not within the state, and not upon its being evidenced or not in any particular manner. The credit is one thing, the evidence of it is another thing, and, as has been said by the Supreme Court of the United States in a number of decisions, the tax is on the credit, not on the evidence of it. We do not see why the form of a credit should have anything more to do with its taxability than the form of a horse has to do with his taxability.

Of course, the case is, entirely different where the credit has become, as it were, merged in the evidence of it, so that the mere evidence has itself become property, and is itself the thing upon which the tax is levied, as in the case of bank notes, etc. The form

is then all-important. In the case of State Tax on Foreign-Held Bonds, 15 Wall. 300, 21 L. Ed. 179, the Supreme Court of the United States likened credits of that kind to corporeal property, which is taxable wherever situated. But the court in that case made a broad distinction between credits of that kind and all other kinds of credits, which are mere credits the evidence whereof has not itself become property. The court said:

"But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner."

This distinction here made by the court is not between debts evidenced by writing and debts not evidenced by writing, but between credits whereof the evidence is by custom and usage treated as being in itself property, such as bank notes, etc., and credits of all other kinds, the evidence whereof is not by custom and usage treated as being in itself property. All credits of the latter description—that is to say, "bonds, mortgages, and debts generally" —are placed by the court on the same plane, in the same category, and are said to have no situs independently of the domicile of the owner.

We could understand that the manner in which the debt was evidenced would be significant, if the situs of the evidence of the debt were taken to be the situs of the debt, or even an indication of the situs of the debt. But this is not so. In the case of Kirtland v. Hotchkiss, 100 U. S. 491, 25 L. Ed. 558, where a debt was evidenced by bonds secured by mortgage on property situated in Chicago, Ill., and held there, the situs of the debt was held to be in the state of Connecticut, at the domicile of the owner. In Savings & Loan Society v. Multnomah County, 169 U. S. 426, 18 Sup. Ct. 392, 42 L. Ed. 803, the court held that a mortgage debt was taxable in the state where the debtor resided and the property upon which the mortgage rested was situated, although the bonds evidencing the debt

were constantly owned and held outside of the state. In Buck v. Beach, 206 U. S. 392, 27 Sup. Ct. 712, 51 L. Ed. 1106, mortgage notes belonging to a resident of New York, but in the possession of an agent in Indiana, were held to have their situs in Ohio, where they were due and secured by mortgage, and to be taxable there, and not in Indiana. In Metropolitan Life Ins. Co. v. Board of Assessors, 115 La. 698, 39 South. 846, 9 L. R. A. (N. S.) 1240, 116 Am. St. Rep. 179, promissory notes due by residents of this state, but owned and held in New York, were held to be taxable here. Thus it is seen that the written evidence of the debt, not only does not determine the situs of the debt, but can have no influence in fixing it. In the two last-mentioned cases both the creditor and the evidence of the debt were out of the taxing state. Where the debt is evidenced by writing, but the evidence is situated out of the taxing state, the fact of its being so evidenced ought logically to detract from and not add to its taxability in the taxing state, for it ought to be an additional indication of its not being situated in the taxing state.

Again, we could understand that there would be a difference between debts evidenced by writing and those not so evidenced, with regard to their taxability, if the statute imposing the tax made such a distinction; but it does not. It imposes the tax upon open accounts by name, and, in prescribing the duty of assessors, requires open accounts by name to be assessed.

Is this court to hold this statute to be constitutional, in so far as it taxes such credits as are evidenced by writing, although the writing is situated in another state, as was done in the Metropolitan Life Ins. Co. Case, and unconstitutional in so far as it taxes credits whereof the evidence, although not in writing, is situated in this state, in the persons who alone have personal knowledge of the transaction out of which the credits

have grown? If we did this, we should be making the constitutionality of the statute depend, not upon the credit being situated or not within this state, but upon its being evidenced or not by writing. We should be adopting a distinction not made by the statute, not made by the Constitution, not founded upon the nature of things, but simply of our own fabrication.

This would not be true, we repeat, if the situs of the evidence of the debt determined the situs of the debt. The fact of there being written evidence would then, we repeat, be all-important. The court, in ascertaining the situs of the debt, would inquire where was the situs of its evidence. But, as already stated, the decisions are all to the effect that the tax is on the debt, and not on the evidence of it (except in the case of certain evidences of debt which are themselves property), and that the situs of the evidence does not determine, or even indicate, the situs of the debt.

The decisions of this court in Bluefields Banana Co. v. Board, 49 La. Ann. 43, 21 South. 627, Parker v. Strauss, 49 La. Ann. 1173, 22 South. 329, Comptoir National d'Escompte.v. Board, 52 La. Ann. 1319, 29 South. 801, Metropolitan Life Ins. Co. v. Board of Assessors, 115 La. 698, 39 South. 846, 9 L. R. A. (N. S.) 1240, 116 Am. St. Rep. 179, and Monongahela Coal & Coke Co. v. Board, 115 La. 564, 39 South. 601, 2 L. R. A. (N. S.) 637, 112 Am. St. Rep. 275, were not put on the ground that the credits there involved were evidenced by writing, but on the broad ground that said credits represented capital engaged in business in this state, and receiving the protection of the laws of this state, and therefore taxable in this state.

These decisions are a departure from the earlier jurisprudence, but they are in accord with the later jurisprudence of the country. Thus in the recent work of Gray on Limitations to Taxing Power, p. 89, we find the following:

"In other recent cases it has been held that credits in the form of notes, choses in action, and book accounts, belonging to a foreign corporation doing business in the taxing state, which credits resulted from its business operations in the state, are taxable."

In other recent works we find the following:

"A foreign corporation, which is liable for personal taxation for sums invested in business in this state, is taxable upon credits and bills receivable which are in this state and are due the corporation for merchandise sold by it in the transaction of business in this state." Hammond on Taxation of Business Corporations, p. 22, par. 29.

"And it is well settled that choses in action, whether book accounts, promissory notes, or other credits due in the regular course of business carried on by a foreign corporation within a state, are taxable." Beale on Foreign Corporations, p. 647, § 488.

The earlier jurisprudence of this state was founded upon the doctrine that the situs of personal property is at the domicile of the owner, or, as expressed by the Latin maxim, "Mobilia sequuntur personam." In the leading case of Barber Asphalt Co. v. City, 41 La. Ann. 1015, 6 South. 794, which involved paving certificates, a kind of credits evidenced by writings having almost the probative force of judgments, the court held broadly that credits could have no situs elsewhere than at the domicile of the owner; and the decisions of Liverpool, London & Globe Ins. Co. v. Board, 44 La. Ann. 760, 11 South. 91, 16 L. R. A. 56, Id., 51 La. Ann. 1028, 25 South. 970, 45 L. R. A. 524, 72 Am. St. Rep. 483, Railey v. Assessors, 44 La. Ann. 766, 11 South. 93, and Clason v. City, 46 La. Ann. 1, 14 South. 306, are founded upon the same doctrine.

Those cases lose their authority when it is shown that the doctrine of "mobilia sequuntur personam," upon which alone they are founded, can be of no utility in fixing the situs of movables, whether corporeal or in-

corporeal, with reference to their taxability. This is so because, as is incontestably established by the later decisions, the said doctrine is not founded upon the nature of things, but is simply a legal fiction, adopted arbitrarily by the courts for convenience in the settlement of estates, and, being a fiction, cannot be set up for staying the hand of the taxing power, which, as said by Cooley, Tax. p. 19, levies upon whatever property may be within its reach. When property, corporeal or incorporeal, is · proposed to be withdrawn from under the operation of the taxing power—that is to say, of the sovereignty—of a state, the question is not as to where it is fictively situated, but as to where it·is actually situated, or, in other words, as to whether it is within reach. A horse, or a stock of goods, in New York, cannot be taxed in Louisiana, because it is not within reach of the sovereignty of the state of Louisiana. But it will not do to say that the sovereignty of the state of Louisiana, in its need for revenue, cannot reach the accounts involved in this case, when the same accounts are within the reach of the civil sheriff of the parish of Orleans, right here in New Orleans, at the suit of any private creditors of plaintiff.

In the recent case of Blackstone v. Miller, 188 U. S. 205, 23 Sup. Ct. 277, 47 L. Ed. 439, the matter involved was the right of the state of New York to levy an inheritance tax upon two credits inherited by a resident of the state of Illinois, one growing out of a deposit of money in bank, and the other out of an ordinary debt for money, in the state of New York. In discussing the case the court said:

"Power over the person of the debtor confers jurisdiction, we repeat. And, this being so, we perceive no better reason for denying the right of New York to impose a succession tax on debts owed by its citizens than upon tangible chattels found within the state at the time of the death. The maxim, 'Mobilia sequuntur personam,' has no more truth in the one case than in the other. When logic and the policy of a state conflict with a fiction due to historical tradition, the fiction must give way."

In Chicago, etc., R. Co. v. Sturm, 174 U. S. 712, 19 Sup. Ct. 800, 43 L. Ed. 1144, the Supreme Court of the United States in discussing the situs of a debt said:

"A debt may be as valuable as tangible things. It is not capable of manual seizure, as they are; but no more than they can it be appropriated by attachment without process and the power to execute process. A notice to a debtor must be given, and can only be giveɹ and enforced where he is. This, as we have already said, is a necessity, and it cannot be evaded by the insistence upon fiction or refinements about situs or the rights of the creditor. Of course, the debt is the property of the creditor; and, because it is, the law seeks to subject it, as it does other property, to the payment of his creditors. If it can be done in any way than by process against and jurisdiction of his debtor, that way does not occur to us."

In New Orleans v. Stemple, 175 U. S. 318, 20 Sup. Ct. 113, 44 L. Ed. 179, the Supreme Court of the United States quoted approvingly from the case of Wilcox v. Ellis, 14 Kan. 588, 19 Am. Rep. 107, as follows:

"The power of the state to tax a citizen and resident of Kansas on money due him in Illinois, evidenced by a note, which is left in Illinois for collection, was denied, the court saying, after referring to the maxim, 'Mobilia sequuntur personam':
"This maxim is at most only a legal fiction; and Blackstone, speaking of legal fictions, says: 'This maxim is invariably observed, that no fiction shall extend to work an injury; its proper operation being to prevent a mischief or remedy an inconvenience that might result from the general rule of law.' 3 Bl. Com. 43. Now, as the state of Illinois, and not Kansas, must furnish plaintiff with all the remedies that he may have for the enforcement of his rights connected with said notes, debts, etc., it would seem just, if said debt is to be taxed at all, that the state of Illinois, and not Kansas, should tax it, and that we should not resort to legal fictions to give the state of Kansas the right to tax it."

And to this the Supreme Court of the United States added:

"The decisions of the highest courts of New York are to the same effect."

In State Board of Assessors v. Comptoir National d'Escompte, 191 U. S. 399, 24 Sup. Ct. 113, 48 L. Ed. 237, the Supreme Court of the United States said:

"The maxim, 'Mobilia sequuntur personam,' which was applied in the court below as for-

bidding taxation of the checks in the hands of the agent in New Orleans, has been frequently held to be but a fiction of law, having its origin in considerations of general convenience and public policy, and not to be applied to limit and control the right of the state to tax property within the jurisdiction; it being intended to permit the owner to deal with his personalty according to the law of his domicile, and to make testamentary disposition of it according to the law where he is, rather than that of the situs of the property. It was intended for convenience, and not to be controlling where justice does not demand it."

To the same effect are the decisions of this court in the cases of Metropolitan Life Ins. Co. and Monongahela River Coal & Coke Co., supra.

We fail entirely to understand how it can be said that these open accounts are not within the reach of the taxing power of the state, when they are within the reach of the civil sheriff of the parish of Orleans at the suit of any ordinary creditor of plaintiff, and are within the reach of the tax collector, who could, by regular recourse against them, realize out of them the taxes imposed upon them. Why the open accounts should be sufficiently tangible and concrete to be taxable when due to residents, and too intangible and abstract for undergoing the same process when due to nonresidents, we are utterly unable to understand, except on the theory of "mobilia sequuntur personam," which, as shown above, is as thoroughly exploded in the law of taxation as the theory of nature abhorring a vacuum is exploded in the law of physics.

We conclude that the open accounts assessed in the case are part of the capital of the plaintiff invested in business in this state, and as such are taxable in this state.

Judgment affirmed.

NICHOLLS, J., concurs in the decree. MONROE, J., dissents.

LAND, J. I concur in the decree on the ground that the tax is on capital invested in this state.

BREAUX, C. J. For the reasons assigned in my dissenting opinion this day handed down in the case of National Fire Insurance Company v. Board of Assessors et al. (No. 16,745), 46 South. 120, I dissent.