Shattuck & Hoffman vs. New Orleans et al.

## No. 9793.

### SHATTUCK & HOFFMAN VS. CITY OF NEW ORLEANS ET AL.

The tax payer, before bringing suit for the reduction or correction of an assessment, must, as a condition precedent, make the preliminary opposition thereto and application for redress, provided for by law.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*W. F. & D. C. Mellen* for Plaintiffs and Appellees:

1. A lumping assessment, including "money loaned on interest, all credits and all bills receivable for money loaned or advanced"—$175,000—does not enable the tax collector to ascertain the tax due on any class or article of property, and is void. Thibodaux vs. Keller, 29 Ann. 510; Clinton and P. H. R. R. vs. Collector, 30 Ann. 626; Desty on Taxation, Vol. 1, pp. 564 and 565; San Francisco vs. Mackay, 21 Fed. R. 539; Constitution, 1879, Art. 210; Act 96, 1882.

2. Under the State Constitution of 1879, and the various acts of the legislature passed since that Constitution went into effect, neither the assessment of taxes nor the filing of the tax rolls in the mortgage office, affects the property of the tax payer who is assessed, with a general lien or privilege or legal mortgage. Each piece of property is liable for the tax assessed on it and no other. Const., Arts. 210 and 218; Act 107, 1884; Act 96, 1882, secs. 32, 33, 34.

3. A general privilege or legal mortgage affecting all the property of the tax payer assessed would be a vain thing, for a suit to enforce such privilege or mortgage could not be maintained. The right of seizure and sale is expressly limited to the assessed property for the amount of tax assessed thereon. Const., Arts. 210 and 218; 35 Ann. 301; Ib. 329; 36 Ann. 812; Act 96, 1882, secs. 40, 41, 42, 44, 45, 46, 47, 48.

4. Only such property can be seized and sold for taxes assessed upon it as has been assessed in such manner that it can be identified by the owner, by the tax collector, and by the purchaser. Act 96, 1882, secs. 6, 12, 13, 14, 18, 21, 24, 25, 26, 27, 34, 35, 41, 43, 44, 45, 46, 47, 48.

5. A tax on moneys loaned on interest, is incapable of being enforced. "Moneys loaned on interest" cannot be identified or seized and sold.

6. A tax on "all credits and all bills receivable for money loaned or advanced," cannot be enforced. It is possible to identify a particular bill when properly described in the assessment; but the general designation "bills receivable" in an assessment is an insufficient description, and meaningless.

7. Bills receivable, whether properly described or not, are transitory things. They may be paid and surrendered after assessment and before the time for the collection of the tax arrives. The collector cannot, as to such property collect the taxes in the manner pointed out by the Constitution.

8. The Constitution, Art. 210, in providing: 1st., that taxes should be collected without suit; 2d., that they should be collected by advertisement and sale; 3d., that the advertisement and sale should be confined to the property on which the taxes are due; 4th., that the collector should sell such portion of the property assessed as the debtor should point out; 5th., and that if the debtor should fail to point out sufficient property, the collector should forthwith sell the least quantity of property which any bidder will buy for the amount of the taxes, interests and costs; has excluded from taxation all property on which the taxes assessed cannot be collected by seizure and sale.

9. Under the Constitution and laws of this State, the Bureau of Assessments is the complement of the Bureau of Collection, and there is no authority in the General Assembly to

require that the assessors shall do the vain thing of listing and assessing "moneys loaned on interest, and all credits and bills receivable for money loaned or advanced," since the Constitution permits of no legislative provision for the collection of taxes assessed thereon.

10. A suit to annul an assessment on the ground of its unconstitutionality or illegality is different from a suit to revise or correct an assessment, because of errors in description or valuation. The right of action to correct an assessment, conferred by Art. 203 of the Constitution, and recognized by sec. 27 of Act No. 96 of 1882, and sec. 9 of Act No. 107 of 1884, does not depend upon a previous application to the Board of Assessors or the Committee of Revision. A fortiori, such application is not a condition precedent to a suit to annul an assessment as unconstitutional or illegal. Act 107, 1884, sec. 9; Act 96, 1882, sec. 27; Act 77. 1880, sec. 51; Act 96, 1877, secs. 87, 88 and 89; Gay vs. Board of Assessors, 34 Ann. pp. 370, 372, 373; Const., Art. 203.

*W. H. Rogers*, City Attorney, and *B. K. Miller*, Assistant City Attorney, for Defendants and Appellants.

The opinion of the Court was delivered by

WATKINS, J. Plaintiffs were assessed in 1885 on "money loaned on interest, all credits and all bills receivable for money loaned or advanced, $175,000," in value, and they sue for the annulment thereof on the ground that the assessment is "vague, indefinite and uncertain, and does not sufficiently describe the property assessed. That it is meaningless and confuses property of different kinds, each kind insufficiently described. That it shows nothing, no property of any kind, that, under the Constitution and laws of the State, can be seized and sold by the collector of taxes."

In the alternative, they pray that, if it be held that said assessment is not null, it be reduced to $25,000, for the reason that a proper assessment of all the effects of said firm would not have exceeded that sum.

The State and city affirm the validity of the assessment; and all the defendants—including the Board of Assessors—except to plaintiffs' action, because " it does not appear that the plaintiffs ever applied to the Committee of Revision of the City Council for the correction of this assessment, antecedent to the institution of this suit.

This exception seems not to have been passed upon by the judge *a quo*; but, on the merits, he annulled the assessment, and from this judgment the defendants have appealed.

I

The exception must be first disposed of.

Section 27, of Act 96 of 1882, provides : " That all taxpayers shall have the right to appear before the Board of Assessors in the parish of Orleans, during the sessions of said board, and be heard concerning the description of the property listed and the valuations of the same

as assessed, and they shall have the right of testing the correctness of their assessments before the courts of justice, in any procedure which the Constitution and laws may permit, but the action to test such correctness shall be instituted on or before the first day of November of the years in which the assessment is made."

That law was amended by Section 9 of Act 107 of 1884, so as to read as follows, viz: "That all taxpayers shall have the right to appear before a standing committee on assessment of the City Council of New Orleans, as provided in the aforesaid act, during the sessions of said board, and be heard concerning the description of the property listed and the valuation of same, as assessed, and they shall have the right of testing the correctness of their assessments before the courts of justice in any procedure which the Constitution and laws may permit, but the action to test such correctness shall be on or before the 1st day in November of the year in which the assessment is made. Said committee shall determine upon said application and report their action at once to the City Council for its approval or rejection, and such decision of the Council shall be final, unless set aside, in accordance with Article 203 of the Constitution."

In City of New Orleans vs. Canal and Banking Company, 32 Ann. 157, the Court construed the provisions of Act 96, of the extra session of 1877, which are quite similar to those above quoted, and said: "As regards the methods adopted by the assessors to ascertain the value to be taxed, we think that the objection, even if well founded, comes too late. After assessments have been made, the law directs the rolls to be exposed and advertised for thirty days, and requires all persons objecting thereto to come forward and claim correctness. Ample opportunity and efficient means are provided to enable the taxpayer to have all errors corrected. If he does not urge his objections within the time allowed, he is thereafter precluded."

That act permitted any taxpayer who conceived himself aggrieved by an assessment, to make an appeal in writing to the assessor, within thirty days after same had been filed and advertised, "stating particularly the correction desired;" and made it the duty of the assessor to "proceed to hear and adjudge his case." It gives to the taxpayer the right of appeal to the courts on his taking an oath "that gross injustice has been done him." Sections 5, 15 and 29 Act 96 extra session of 1877.

In Gay vs. Board of Assessors, 34 Ann. 370, the Court had under consideration the provisions of Article 51 of Act 77 of 1880, which are identical with those of Section 27 of Act 96 of 1882, above quoted, with the

exception of the limitation of time within which the action should be brought, which, in the former, was " prior to the day of tax sale, as advertised, and not afterward."

The Court said of the Act of 1877: " The complaint to the board and a resort to arbitration were conditions precedent to the appeal to the courts."

There was no like phraseology employed in either the law of 1880 or 1882; but in that of 1884 it was expressly provided that the standing committee on assessment, shall determine, upon the application of the taxpayers," and report " their action at once to the City Council, for its approval or rejection; and such decision of the City Council shall be final, unless set aside, in accordance with Article 203 of the Constitution."

This we consider as a condition precedent to the taxpayer's right of action to test the correctness of an assessment before the courts, and its non-observance is fatal to the plaintiff's action.

II

But plaintiff's counsel argue that this is not a case to test the correctness of an assessment, the constitutionality or legality of which are otherwise admitted; but one to annul, to declare void the whole assessment. It says: " The right to institute it was not conferred by the tax laws of 1882 and 1884. It existed independent of those laws, under the general jurisprudence of the State."

Again: " Besides Art. 203 of the Constitution gives to the taxpayer the right of testing the correctness of their assessments before the courts of justice. It is an absolute and unconditional right, and the legislature cannot take it away."

This argument is fully answered by the statute of 1884, which has placed an intepretation on that article. It clearly states that the report of the standing committee shall be final, unless set aside in accordance with Art. 203.

The right of the taxpayer to appear before the standing committee, and be heard concerning the description of the property listed and the valuation of the same as assessed, and the report of the standing committee on assessment of the City Council, are proceedings preparatory and prerequisite to the taxpayer's right of action to test the correctness of the assessment in the courts of justice. This was certainly a wise precaution taken by the legislature to prevent unnecessary and vexatious embarrassment and delay in the collection of the revenues. We think the revenue laws must be consulted in determination of plaintiffs' right and cause of action. They afford the taxpayer ample

14

justice.    We cannot assume that the committee on assessment would not or could not have afforded plaintiffs ample and speedy relief—if indeed they were entitled to any, and if they had not, they could then readily have applied to the courts of justice for relief.

Conceding all that plaintiffs urge against their assessment, for the purpose of argument, we can see no reason why the committee did not have ample authority under the statute to correct any errors shown to have existed in the description of the property listed, and the valuation of same as assessed; and that is the substance of their demands.

The case of Adler, Goldman & Co. vs. Board of Assessors, 37 Ann. 507, is conclusive against the plaintiffs as to the character of their action.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and proceedings to render such judgment as should have been rendered by the judge *a quo*, it is ordered, adjudged and decreed, that the exception taken by defendants be sustained and plaintiffs' suit dismissed, and all costs of both courts be taxed against them.

Rehearing refused.