(47 South. 439.)

No. 16,818.

TRAVELERS' INS. CO. v. BOARD OF ASSESSORS et al.

(June 22, 1908. On Rehearing, Oct. 7, 1908.)

1. TAXATION (§ 95*) — PROPERTY — SUBJECT— LOANS TO POLICY HOLDERS.

Loans made by a foreign insurance company to its policy holders, residents of this state, as part of its business done in this state, are taxable in this state, though evidenced by notes held abroad.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 95.*]

2. TAXATION (§ 462*)—FAILURE TO LIST PROPERTY.

The state may subject to the doom of the assessor a taxpayer who has failed to furnish a list of his property to the assessor as required by law, but not where the failure to make such return was without fraudulent intent and from an honest belief, founded upon reasonable grounds, that what property he had was not taxable.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 462.*]

122 LA.—5

3. TAXATION (§ 462*)—RETURN OF NO PROPERTY.

A return of "No property," where there is property, is no return, and does not save the taxpayer from the doom of the assessor.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 462.*]

4. TAXATION (§ 493*)—OVERASSESSMENT.

If the taxpayer has two bank accounts, one taxable and the other not, and makes no return, and nothing shows that in fixing the amount of his assessment the assessor took into consideration the nontaxable bank account, the situation will be as if the assessor had overestimated the taxable bank account, and the assessment will not be open to review by application to the courts.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 493.*]

Breaux, C. J., and Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by the Travelers' Insurance Company against the board of assessors and others. From the judgment the company appeals. Judgment set aside and rendered.

John May and Victor Leovy, for appellant. Francis Charles Zacharie (Harry Prentiss Sneed, of counsel), for appellee, state tax collector. George Hitchings Terriberry, for appellee board of assessors. Henry Garland Dupré, Asst. City Atty., for appellee city of New Orleans.

PROVOSTY, J. The plaintiff is a Connecticut corporation, domiciled at Hartford, in that state, and does an insurance business in this state, including life, accident, and liability insurance, through an agent located in New Orleans. For the year 1906 it was assessed as follows:

Money loaned on interest or credit.... $40,000
Money in possession................. 4,000

Plaintiff contests this assessment. It contends, as to the first item, that the loans which it makes to its policy holders are not in reality loans and do not give rise to credits; but that, if they are loans and do give rise to credits, they nevertheless are not

taxable in this state because not situated in this state. Plaintiff contends, as to the second item, that it embraces money which is deposited in bank merely for transmission, and which, therefore, is not taxable in this state, it not being situated in this state, and that the assessment, even as including this nontaxable. money, is excessive.

Against the right of plaintiff to appeal to the courts on the score of the excessiveness of the assessment the defendant board pleads the estoppel provided for by section 25 of the revenue law (Act No. 170, p. 360 of 1898), which reads as follows:

"Sec. 25. Be it further enacted, etc., that it is hereby made the duty of every taxpayer in the parish of Orleans to make return of his property, duly sworn to, within twenty (20) days after the list for such purpose shall have been left at his domicile or place of business, and any refusal, neglect or failure from any cause whatsoever to comply with this provision of this act shall act as estopping the taxpayer from contesting the correctness of the assessment list filed by the assessor," etc.

The defendant, as we understand, does not contend that plaintiff is estopped from contesting the taxability of the property, but only the valuation or estimate which has been put upon it in the assessment.

The facts in connection with the loans are these: The policies of plaintiff contain a clause that the policy holders "may borrow" on the security of the policy an amount of money equal to what the surrender value of the policy will be one year after the loan. For effecting a loan, the policy holder applies for it to the resident agent, and the latter furnishes a blank form. This blank is filled out, and the resident agent sends it to the home office of the plaintiff. The home office sends to the resident agent a check payable to the borrower, and the agent turns this check over to the borrower, receiving his policy as collateral security for the loan. No other papers are executed. The application for the loan evidences the entire transaction. It recites that so much money has been loaned; that the loan bears so much interest, and is payable at such a date, at which date repayment of it may be demanded, subject to extension by consent of both parties, and is secured by pledge of the policy. The maturity of the note corresponds with the maturity of the premium next falling due, and a stipulation is added that in the event of nonpayment of the note, or of the premium, within one month after due, the company is .authorized to cancel the policy for its cash surrender value, and to attribute pro tanto the amount due under the policy to the payment of the note. The note thus executed is kept by the home company. One month before the note and the premium fall due the home company sends to the resident agent a receipt for the premium and the interest on the note, and also a notice to be sent to the policy holder. The agent sends the notice, receives payment, and delivers the receipt. In case of nonpayment at the expiration of the delay of grace, he sends the receipt back to the home company with advice of the nonpayment. The receipt for the premium and that for the interest on the note are on the same slip of paper. The usual course of the company is then simply to forfeit the policy and to deduct the amount of the note from its surrender value. When a note is paid, the payment is made to the local agent, who transmits the amount to the home company. The paid note is then sent to the agent, who delivers it to the maker. The loans outstanding on the 1st of January, 1907, amounted to $36,279, and this is approximately the average throughout the year. The amount of overdue premiums never exceeds $500.

The facts in connection with the "money in possession" are these: The company keeps in this state two bank accounts—one in the name of "Travelers' Insurance Company, of Hartford, Conn.," and the other in the name of "Travelers' Insurance Co., Alfred Well-

born, Cashier." In the former account are deposited each day all moneys collected for the account of the company. For making these deposits two deposit slips are made out, one of which accompanies the deposit, while the other is immediately mailed to the home office. The local agent keeps no pass book, has no power of attorney, and has absolutely no control over this account, other than to make deposits therein. The local agent does not even know at any one time what, if any, balance remains in this account, which is subject solely to the control of the home office, which from time to time, and as it sees fit, drafts on same. The balance to the credit of this account on January 1, 1906, was $1,880.73. The other account—that in the name of "Travelers' Insurance Co., Alfred Wellborn, Cashier"—is a small account kept to defray general expenses. It never exceeds the sum of $250.

The facts in connection with the estoppel are as follows: By sections 14 and 16 of the revenue law (Act No. 170, p. 354 of 1898) it is made the duty of the assessor to furnish to each person owning property an assessment list, to be filled out and sworn to; and by section 19 of the same law it is made his duty to make the assessment himself "in whatever way he can, from the best information he can obtain," in case the owner fails or refuses to make it. The local agent of the plaintiff company was called upon to make out the assessment of plaintiff. He wrote upon the list the following: "Have no property or money of the Travelers' Insurance Co."—and he made oath to this return.

In contending that the loans in question are not in reality loans and do not give rise to credits, the learned counsel for plaintiff assume that the transaction is merely an advance pro tanto of the amount eventually payable under the policy; that the money cannot be required to be reimbursed, but can only be deducted from the surrender val-

ue of the policy. If such were the case, there would be no loan and no credit, and therefore nothing to be taxed, and a case would be presented similar to the one which Judge Saunders, sitting as circuit judge, had to deal with in the suit of New York Life Ins. Co. v. Board of Assessors, 158 Fed. 462, recently decided in the United States Circuit Court for the Eastern District of Louisiana. But the document evidencing the loan expressly stipulates: "The company may demand the repayment of said loan at its maturity." True, the company also "is authorized" to cancel the policy and deduct the amount of the loan from the surrender value; but this merely gives it an option so to do. It does not impose an obligation.

The question of whether credits arising like these in the course of business done in this state are situated in this state, and therefore taxable in this state, was carefully considered by this court in the recent cases of General Electric Company v. Board of Assessors, 46 South. 122,[1] and National Fire Ins. Co. v. Board of Assessors, 46 South. 117, 121 La. 107, and need not be re-examined.

Plaintiff's learned counsel argue that the item of money in possession embraces the two bank accounts of plaintiff, and that inasmuch as one of these accounts represented money in course of transmission, and therefore not taxable, the suit as concerns this nontaxable bank account is not in reduction of the assessment, but in cancellation or annullment of it, and does not come within the estoppel pleaded by defendant.

We will not stop to consider whether the bank account in question is taxable or not, since nothing shows that the defendant board took it into consideration in making the assessment. For all that appears, the defendant board did not know that the plaintiff company had more than the one bank account, whereof plaintiff now admits the

---

[1] 121 La. 115.

amount to have been taxable. If the defendant board erred in fixing the amount of the latter account, the plaintiff company has but itself to blame, as it was afforded a full opportunity to furnish a correct statement of the amount.

This brings us to the question of the reduction of the amount of the assessments; that is to say, to the estoppel.

In opposition to this plea of estoppel the plaintiff contends, first, "that it did make a return of its property duly sworn to," and that consequently the statutory estoppel does not apply to its case; secondly, that a statute which subjects the taxpayer to the doom of the assessor is unconstitutional, as being a taking of property without a hearing, or, in other words, without due process of law.

The object of the statute, in requiring the taxpayer to furnish a statement of his property and imposing upon him the penalty of estoppel in case he fails or refuses to do so, is to assist the assessor in ascertaining what property the taxpayer has. This object is not in the slightest degree forwarded by a return which simply states that the taxpayer had no property. Such a return is worse than no return. It is misleading.

By the Supreme Court of Rhode Island a return, "No ratable personal estate over and above the actual indebtedness of the company," was held to be no return, and not to stay the operation of a statute of estoppel similar to the one relied on in the instant case. Coventry Co. v. Assessors, 16 R. I. 240, 14 Atl. 877. See, in the same sense, In re Newport Reading Room, 21 R. I. 443, 44 Atl. 511, Washington, B. & L. Ass'n v. Hornbacker, 42 N. J. Law, 635, and Desty on Taxation, vol. 1, p. 433.

The settled jurisprudence has heretofore been that it is competent for the Legislature to impose such a penalty. Griggsry Construction Co. v. Tax Coll., 108 La. 437, 32

South. 399, 58 L. R. A. 349; 27 A. & E. E. 718; Weltz on Assessments, p. 291, § 159; Hilliard on the Law of Taxation, p. 321, § 57, note 2; Desty on Taxation, p. 453, and authorities in note 8; Id. p. 454, and notes 4 and 5; Cooley on Taxation (3d Ed.) vol. 1, pp. 619, 622, 623; Gray on the Limitations of the Taxing Power, p. 604, § 1218, and note 7a; Glidden v. Harrington, 189 U. S. 255, 23 Sup. Ct. 574, 47 L. Ed. 798. But in the recent case of Central of Ga. Ry. v. Wright, 207 U. S. 127, 28 Sup. Ct. 47, 52 L. Ed. 134, the Supreme Court of the United States held that due process of law requires that, where the taxpayer's failure or neglect to make a return was without fraudulent intent and from an honest belief, founded upon reasonable grounds, that the property was not taxable, he must be offered an opportunity to be heard, and that decision is, of course, binding upon this court, since the question is federal.

In the instant case the reason for not mentioning the loans or credits in the return was that under the jurisprudence of this court prior to the decision in the case of Metropolitan Life Ins. Co. v. City of N. O., 115 La. 698, 39 South. 846, 9 L. R. A. (N. S.) 1240, 116 Am. St. Rep. 179 (handed down in November, 1905, and affirmed by the Supreme Court of the United States in April, 1907, 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853), such credits had not been taxable in this state. That reason is the same which was held by the Supreme Court of the United States in the Central of Ga. Ry. v. Wright Case, supra, to have been "reasonable"; and we find in this case, as was found in that case, that the plaintiff, in not returning the property for assessment, acted in perfect good faith. The suit of plaintiff, however, in so far as this item of loans and credits is concerned, is distinctly for cancellation, and not for reduction, of assessment; and hence no reduction of this item.

can be made. We may add that plaintiff suffers no very great loss thereby, since the reduction, if made, could only be from $40,-000 to $36,779.

With reference to the "money in possession" the plaintiff company had no "reasonable grounds" for not making a return, and must be held to be subject to the doom of the assessor.

The judgment appealed from will have to be amended accordingly. For convenience in statement we set it aside entirely.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that plaintiff's demand be rejected, and that plaintiff be condemned to pay 10 per cent. attorney's fees on the aggregate of the taxes and penalties accruing on the assessment herein, and to pay costs in both courts.

MONROE, J. I am of opinion that the debts due by citizens of Louisiana to plaintiff, a foreign corporation, are not taxable in this state. I therefore dissent from so much of the foregoing opinion and decree as hold the contrary, and otherwise concur.

BREAUX, C. J. I dissent.

### On Rehearing.

LAND, J. The plaintiff company has been doing a life insurance business in the state of Louisiana for several years through its duly authorized agents, collecting annual premiums to the amount of some $60,000 or $70,000, and lending money to its policy holders on the pledge of their respective policies.

The argument that such loans were mere advances out of funds belonging to the policy holders is certainly not serious. The written contracts evidence loans on interest secured by a pledge of the policies, and the petition alleges that the plaintiff company was illegally taxed on "loans made to policy holders."

That, under section 7 of Act No. 170, p. 350, of 1898, such credits arising out of the business transacted in this state are taxable, cannot be seriously disputed. See Metropolitan Life Insurance Company v. New Orleans, 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853. The distinction between taxing the average capital invested by a nonresident in business carried on in a particular state and the taxation of isolated credits due to nonresidents is obvious. The purpose of the section quoted is to place the resident and nonresident business concern on the same plane of equality. Section 7 of Act No. 170 of 1898 operated full notice to foreign corporations that if they engaged in business in the state of Louisiana they would be taxed in the same manner as similar local corporations.

The only issue raised by the pleadings is whether the plaintiff company is taxable on credits arising out of its business and representing capital invested in this state.

The proposed constitutional amendment of 1908 exempting loans on life policies from taxation recognizes their taxability under the provisions of the Constitution of 1898.

Act No. 170 of 1908, making mortgage paper and other evidence of indebtedness taxable only at the domicile of the holder or owner thereof, has no retrospective operation.

Rehearing refused.