SOMMERVILLE, J.
Plaintiff alleges that he is the owner of 2,450 acres of land in the parish of Red River, described in his petition, which has been regularly assessed to him, together with other personal property owned by him, for the year 1914, and that he owns no other assessable property in the parish, that the real estate has been properly assessed at $14,250, horses at $350, mules at $2,000, cattle at $175, one automobile at $300, wagons at $50, and that the assessor has illegally and without warrant of law added to said assessment “cash value of all other property subject to taxation, including steamboats, steamships, barges, and other water craft, $100,000, and that on the blanks from which said rolls were made up the assessment of $100,000 is placed thereon as ‘oil.’ ” Petitioner shows that “he also owns no steamboats or any other property liable to assessment in said parish, except as stated above,” and he prays that “there be judgment canceling and annulling the part of your petitioner’s assessment reading ‘cash value of all other property subject to taxation, including steamboats, steamships, barges and other water craft, $100,000,’ ” and that said tax collector be perpetually enjoined and restrained from attempting in any manner to collect any taxes upon such illegal assessment.
The assessor and tax collector of Red River parish appeared and filed a plea of estoppel, based on the ground that:
“Plaintiff failed, refused, and neglected to fill out any list of Ms property for 1914, and that he did not file with the assessor of the parish of Red River any such list sworn to by him before the 1st day of May_, 1914, or an-y date later, as provided and required of all taxpayers by law, and that the said taxpayer, the plaintiff, so failing, refusing, and neglecting- to do so, said assessor, G. W. Anglin, made out a list of said plaintiff’s property in the parish of Red River as will be shown by list filed, after which the assessment for said year was made, hereto annexed and made a part hereof; and your defendants show and allege that by the failure, refusal, and neglect of the said B. W. Marston, Jr., to comply with the law requiring Mm to file with such assessor such a list«he is now legally and equitably estopped from contesting the correctness of the assessment list and the assessment as made by the assessor for the year 1914, and which estoppel your defendant especially pleads.”
■ The provision of law upon which the plea of estoppel is based is found in section 14 of Act No. 170 of 1S98, p. 354, as amended in part by section 3-of Act No. 1S2 of 1906, p. 332. The later section reads:
“That it shall be the duty of each taxpayer, the parish of Orleans excepted, to fill out a list of his property and make oath to its correctness, in the manner and form prescribed by existing laws and return the same to the assessor on or before the first day of April of each year, in default of which, for any cause whatever, he shall be estopped from contesting the correctness of the assessment list filed by the assessor.”
The plea of estoppel was sustained, and plaintiff has appealed.
*577 The Constitution provides in article 225:
“That the taxpayers shall have the right of testing the correctness of their assessments before the courts of justice.”
But the sections of the two statutes just quoted provide the penalty of estoppel against those taxpayers who have refused, neglected, or failed, from any cause whatsoever, to fill out lists of their property in accordance with the form provided in section 17 of the statute, from contesting the correctness of the assessment list filed by the assessor. Under the former revenue statutes, containing similar provision to the one now under consideration, except as to the penalty, we held that the requirement of the taxpayers to make return of their property was directory, and not mandatory, and that a failure to make such return was not a bar to a later proceeding to correct an assessment. Merchants’ Mutual Ins. Co. v. Board of Assessors, 40 La. Ann. 371, 3 South. 891. But the more recent statute provides a penalty, as has been seen; and the defaulting taxpayer is estopped thereby from contesting the correctness of the assessment list made by the assessor.
The ruling of the trial judge follows the law as it is commented upon in the opinions in Travelers’ Ins. Co. v. Board, 122 La. 129, 47 South. 439, 24 L. R. A. (N. S.) 388; Millsaps v. Traylor, 128 La. 1069, 55 South. 677; Bertrom v. City, 131 La. 73, 59 South. 19; Crowell & Spencer v. Lafleur, 137 La. 772, 69 South. 170.
The plea of estoppel was properly maintained, if this is a suit for the correction or reduction of an assessment.
After filing the plea of estoppel, the defendants here made answer:
That the land of the plaintiff was in the heart of a proven oil field, he having leased the same for an average price of approximately $100 per acre, and the market value of same being worth several hundred dollars as oil land and for oil purposes; that upon the list made by your defendant assessor in the space shown thereof for the listing of oil lands 2,000 acres of the property of plaintiff was listed at the value of $50 per acre for the year 1914 as oil lands, which said assessment on plaintiff’s property for said year is many times below the actual cash or market value of same, as will fully appear, and that he had assessed said property as “listed” ; that the property is liable and subject to assessment as aforesaid; that plaintiff “is the owner of at least 2,000 aci;es of land subject and liable to assessment thereof at the rate of $50 per acre,” etc.
Plaintiff in his petition alleges that the portion of the assessment in his name for $100,000 in the column “cash value of all other property subject to taxation, including steamboats, steamships, barges, and other watercraft,” has been made illegally by the assessor and without any warrant of law, and he. asks that the same be canceled and annulled. He does not sue for a reduction.
The evidence is clear that plaintiff is not the owner of steamboats, steamships, barges, and other water craft; and the assessor, in his answer, admits that he is not the owner of such property. The evidence shows that the assessor has assessed under the heading of “cash value of all other property subject to taxation,” etc., 2,000 acres of plaintiff’s land at $50 an acre, aggregating $100,000, as its value as oil lands, over and beyond the value placed by him of $14,250 of the same property, as agricultural lands, on the same assessment roll, but in separate columns.
The assessor in answer to the question:
“This item of 2,000 acres at $50, approximating $100,000 — what did you assess that for? A. I put 2,000 acres of Mr. Marston’s land in the oil column at $50 an acre above any agricultural value that the land had, which is shown here, some at $10, some at $5, and some at $2%. This 2,000 acres was the increased value of the land for the oil production which was on it at the time.”
And on cross-examination he said in answer to the questions:
“The lands which you intended to include under the heading ‘oil’ were already assessed to Mr. Marston as agricultural lands? A. Yes, sir. Q. You intended by this supplemental assessment to assess the increased value given to his lands by the presence or supposed presence of oil? A. Yes, sir; that was the idea. Q. *579 Then the $100,000 assessment represents what you considered the increased value given to the land by its supposed oil-bearing qualities? A. It was not supposed, but oil was already there at the time this assessment was made. Q. This $100,000 was the increased value to the land by reason of what you considered its oil qualities; the land being already assessed separately? A. Yes, sir.”
The court asked the witness:
“Did you know whether or not the oil rights belonged entirely to Mr. Marston?”
And he answered:
“No, sir; he had one-eighth. The seven-eighths belonged to the company who owned the well. You will notice on this blank, Mr. Mars-ton, instead of being assessed with approximately 2,300 acres, it shows there was about 4,300 acres, on account of the 2,000 extra acres. I could not extend this on the land column on the tax rolls. It would make our lands in the parish approximately 2,000 acres more than wo have, so we had to put this oil value, as well as a sawmill, for which there is not a column, in the other property and in the column showing ‘any other property,’ except all other property, including steamboats, barges,” etc.
It is thus seen by the testimony of the assessor taken in connection with the assessment roll filed in the record, that the real estate of the plaintiff, some 2,450 acres, has been assessed as agricultural land at $14,250, and that 2,000 of these 2,450 acres have been assessed as “other property subject to taxation,” and that the 2,000 of the 2,450 acres are oil lands.
They are both agricultural and oil lands, and they have been assessed separately, in different columns. The value in one column as agricultural land is $14,250; and the value of 2,000 acres of the same land is given in another column at $100,000. The explanation given by the assessor of this division of the assessment of the same land belonging to the plaintiff is understood, but it is not a correct assessment of the land.
[1 ] The revenue statute makes it the duty of the tax assessors throughout the state to place upon the assessment list all property subject to taxation at its cash value, and real estate is one of the forms of property to' be assessed for taxation. And section 91 of the revenue statute of 1898 (page 386) provides that:
“The term ‘real estate’ shall be held to mean and include not only land, city, town and village lots, but all things thereunto pertaining, and all structures and other things so annexed and attached thereto, as to pass to the vendee by the conveyance of the land or lot.”
So that, in assessing real estate, it was the duty of the assessor in this instance to include, not only the land, but all things appertaining thereto. As the lands of the plaintiff were agricultural and at the same time oil lands, the correct assessment would have been the lands at their valuation for agricultural and oil purposes. It was erroneous, under the law, for the assessor to have divided the value of the land of plaintiff in two parts, and to have valued the same land at two different amounts. The land should have been assessed in one place on the roll at its cash value, either as agricultural or mineral land, or both.
But this error on the part of the assessor does not make the assessment illegal. The assessor was fully warranted by the law in assessing the property of plaintiff as agricultural and oil land; and this suit is not really one to cancel an assessment, or part of an assessment, on the ground of illegality, as is stated in plaintiff’s petition. It is a suit to reduce the assessment of plaintiff’s land from $114,250 to $14,250.
[2] In deciding whether a suit presents the question of the legality of a tax or an assessment we have said that:
“The legality of a tax is in contestation:
“ (1) When it is denied that there is any law in existence authorizing such tax;
“(2) Where, admitting the existence of such a law, it is asserted that the law is invalid, owing to a want of promulgation or other irregularity ; and
“(3) Where it is claimed that the tax was originally imposed * * ‘ in violation of some provision of the law, or by one without legal authority to make such assessment.”
Gillis v. Clayton, 33 La. Ann. 285; Adler & Goldman v. Assessor, 37 La. Ann. 507; *581 Shattuck & Hoffman v. New Orleans, 39 La. Ann. 206, 1 South. 411.
Plaintiff in his petition does not complain that the assessment of his property is illegal on any of the grounds above set forth. He simply says that the assessor has acted illegally and without any wan'ant of law. He does not say that oil lands belonging to him cannot be assessed under the law, or that such property is not subject to taxation. He only disputes or contests the amount of the assessment, and the manner in which it was made, and the description of the prop erty.
Plaintiff’s counsel argues that this is not a case to contest the correctness of an assessment the constitutionality or legality of which is otherwise admitted, hut that it is one to declare void the whole assessment, and that the right to institute it is not conferred by the tax laws; that it exists independent of those laws, under the general jurisprudence of the state. But we have seen that the legality of the assessment is not. involved in this suit, and that the only question presented to the court is one for the correction of one item on the assessment roll as to description and amount.
It was the duty of the taxpayer to make return of his property to the assessor. It was his right to appear before the board of review in the parish in which his property is situated, and be heard concerning the description of the property listed and the valuation of the same as assessed. These proceedings and the report of the board of review are preparatory and prerequisite to the taxpayer’s right of action to contest the correctness of his assessment in the courts of justice. And we say in the case of Shattuck & Hoffman v. New Orleans, 39 La. Ann. 206, 1 South. 411:
“This was certainly a wise precaution taken' by the Legislature to prevent unnecessary and vexatious embarrassment and delay in the collection of the revenues. "We think the revenue laws must he consulted in determination' of plaintiffs’ • right and cause of action. They afford the taxpayer ample justice. "We cannot assume that the committee on assessment would, not or could not have afforded plaintiffs ample and speedy relief, if, indeed, they, were entitled to any, and, if they had not, they could then readily have applied to the courts of justice for relief.”
See, also, Adler & Goldman Co. v. Board of Assessors, 37 La. Ann. 507.
[3] Plaintiff has not alleged, and he has not shown on the trial of the cause, that he made a return of his property to the assessor ; that he filed any protest with the assessor, or made application to the board of review, concerning the correction either in description or value of his property. His petition, without the averments that he has done so, does not disclose a cause of action, lie cannot therefore be heard to complain in the courts that the description or the amount of the assessment of his property is incorrect. A return of his property, a complaint to the assessor, and an appeal to the board of review are conditions prerequisite to the appeal to the courts. City v. Canal & Banking Co., 32 La. Ann. 157; Shattuck & Hoffman v. City, 39 La. Ann. 206, 1 South. 411; State ex rel. Johnson v. Tax Collector, 39 La. Ann. 530, 2 South. 59; Brewing Co. v. Board of Assessors, 41 La. Ann. 565, 6 South. 823; Red River Line v. Parker, 41 La. Ann. 1046, 6 South. 896; Union Oil Co. v. Assessor, 48 La. Ann. 1350, 20 South. 1007; Travelers’ Ins. Co. v. Board, 122 La. 129, 47 South. 439, 24 L. R. A. (N. S.) 388; Millsaps v. Traylor, 128 La. 1069, 55 South. 677; Bertrom v. City, 131 La. 73, 59 South. 19; Crowell-Spencer v. Lafleur, 137 La. 772, 69 South. 170.
As is shown by the numerous authorities referred to, the essential conditions precedent to the exercise of the right of complaining before the court are that the taxpayer shall have made a return of his property to the assessor and a complaint to the board of review. This compliance on his part is mat *583 ter of averment, as well as one of proof. Taxpayers are given the right to appeal to the courts from the decision which may have been made by the assessors or the board of reviewers; and the General Assembly had the power to prescribe a preparatory method or form to be observed by the taxpayer, which is ancillary to the exercise of the right of being heard before the courts. Such preparatory method appears to be provided for generally throughout the various states. And, if plaintiff, by his inaction, permitted the door for relief to close upon him, he has no one to blame but himself. The court is powerless to interfere.
The judgment appealed from is affirmed.
O’NIELL, J., concurs in the decree.