## OTT v. DE BARDELEBEN COAL CORPORATION (and ten other cases).
### Nos. 12116–12126.

Circuit Court of Appeals, Fifth Circuit.
March 5, 1948.
Rehearing Denied April 13, 1948.

W. C. Perrault, First Asst. Atty. Gen., Henry G. McCall, City Atty., H. W. Lenfant and Alden W. Muller, all of New Orleans, and Bertrand I. Cahn, Sp. Asst. Atty. Gen., for appellants.

Arthur A. Moreno, of New Orleans, La., for appellees.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

These suits were brought by appellees for the return of ad valorem taxes assessed and collected by the City of New Orleans and the State of Louisiana. They were consolidated for the purpose of trial as they are for the purpose of appeal.[1]

The four appellees, Mississippi Valley Barge Line Co. (hereinafter called "Mississippi"), American Barge Line Co. ("American"), Union Barge Line Corporation ("Union"), and DeBardeleben Coal Corporation ("DeBardeleben"), as their names imply, operate barge lines. Mississippi, American, and DeBardeleben sued for return of taxes collected for the years 1944 and 1945, while Union sued for return of taxes collected for the year 1945.[2] The taxes were levied under assessments made by the Louisiana Tax Commission under Act No. 152 of 1932, as amended by Act No. 59 of 1944, on the proportion of appellees' lines in Louisiana as compared to their entire systems. Appellees' petitions all follow the same general trend, that the tax is unconstitutional because it is a burden upon interstate commerce, because it violates the due-process clause of the State and federal Constitutions, Const.La.1921, art. 1 § 2; Const.U.S. Amend. 14, and further that the assessments were arbitrary and capricious. Appellants contend that the taxes were constitutional and proper, and further that the question of assessments, that is, the method of making them and the amount thereof, is not now before the court, since appellees did not avail themselves of the administrative remedies given them by the Louisiana law. The trial below resulted in judgments for each of the appellees, ordering the return of the taxes paid, the court holding that in the cases of Mississippi, American, and Union, the retention of the taxes by appellants constituted the taking of property without due process of law in violation of the federal and State Constitutions and holding in the case of DeBardeleben that, while Louisiana had the right to tax such of its property as had a tax situs in Louisiana, the assessment on the proportionate rule basis as made was illegal, null, and void. From the eleven judgments in favor of appellees, both appellants have appealed.

The question common to the various appeals is whether tugboats and barges owned by the different appellees, all non-resident corporations, are taxable in Louisiana as property having a tax situs there.

The record shows that each of the appellees is a corporation chartered under the laws of States other than Louisiana. American, Mississippi, and DeBardeleben are Delaware corporations, and Union is a Pennsylvania corporation. None of the watercraft of American, DeBardeleben, or Mississippi was ever physically within the State of Delaware, but some, if not all, of the taxed property of Union was present during the tax year within the State of Pennsylvania. American and Mississippi

---

[1] The taxes were paid under protest under the terms of Act No. 330 of 1938, which provides that in case any taxpayer resists the payment of the amount assessed against him or the enforcement of any provision of law in relation thereto, the amount shall be paid by the taxpayer but kept segregated; a right of action is given the taxpayer to contest in any State or federal court having jurisdiction the invalidity he insists upon, and, if he prevail, the taxes paid shall be returned with interest.

[2] Mississippi Valley Barge Line Co. and American Barge Line Co. each are plaintiffs in two suits against the Commissioner of Public Finance for the City of New Orleans and in two suits against the State Tax Collector for the City of New Orleans. The DeBardeleben Coal Corp. is plaintiff in two suits against the Commissioner of Finance for the City of New Orleans, and the Union Barge Line Corp. is plaintiff in one suit against that Commissioner.

maintain offices in New Orleans, though their principal business offices are in Louisville and St. Louis, respectively. Union merely employs an agent in New Orleans for the conduct of its business; its principal office is in Pittsburgh. The principal office of the Marine Division of DeBardeleben is in New Orleans; its official home office is in Birmingham, Ala. Each of the four corporations is engaged in transportation of freight upon inland waterways of the United States under authority of a certificate of Public Necessity and Convenience issued by the Interstate Commerce Commission. The taxed towboats of American and DeBardeleben are enrolled under United States Shipping Regulations pertaining to vessels engaged in domestic commerce, Title 46, c. 12, U.S.C.A., at Wilmington, Del., and there, too, they have registered their barges. The towboats of Union are enrolled at Pittsburgh, and the watercraft of Mississippi are enrolled at St. Louis. Under neither Delaware nor Pennsylvania law is the marine equipment of the appellees subject to State taxation.

DeBardeleben operates from New Orleans to Houston, Galveston, and Corpus Christi, in Texas; in Alabama, as far as Mobile; in Florida, to Pensacola, Panama City, and Carrabelle; and in the tax years in question its watercraft made occasional trips up the Mississippi to points north of the Louisiana boundary. The other three operate up and down the Mississippi and its tributaries to points as far north as Minneapolis and east to Pittsburgh. In all trips to Louisiana a tug brings a line of barges to New Orleans, where the barges are left for unloading and reloading and where the tug picks up a loaded line of barges for ports outside Louisiana. These turn-arounds are accomplished as quickly as possible and there is no regular schedule in the sense of a timetable held to. The result is that the tugs and barges are within the boundary of Louisiana only a small portion of the time. Of the total time covered by the interstate commerce operations in 1943, American's towboats spent about 3.8% within the port of New Orleans. In the case of Mississippi for that year, its towboats spent about 17.25%, and its barges about 12.7%; in 1944, its towboats

about 10.2%, and its barges about 17.5%. In 1944, Union's towboats spent about 2.2% and its barges about 4.3%. Appellees' watercraft, while in the port of New Orleans have the benefit of such fire protection as is afforded all craft moored to the wharves, and of harbor police surveillance, and of all sanitary regulations of the State and City Boards of Health.

DeBardeleben was merged or consolidated in 1937 with W. G. Coyle, Inc., a Louisiana corporation which had operated a Marine Terminal and harbor traffic business within the port of New Orleans. To Coyle's operations in 1934 had been added a common carrier water transportation business, mainly in the Gulf Intracoastal Waterways, running westerly as well as easterly from the port of New Orleans. After the merger in 1937, the Coyle operations were conducted as the Marine Division of DeBardeleben, without interruption or material change, under the name of Coyle Lines. The main office of the Marine Division of DeBardeleben, from which it controlled and carried on continuously all of the Coyle Line operations, was located in New Orleans, and so also was the machine and repair shop, maintained for upkeep and repair of its watercraft. At the New Orleans office the crews of the tows were regularly paid their wages, and to it the employees reported at the customary taking of the usual 24-hour lay-off at the end of each 6-day work period called for under the union labor contract. At the Coyle New Orleans Terminal, the tugs operated by Coyle Lines were usually fueled, and there, too, as a rule, were made all scheduled general repairs or minor voyage repairs needed by the Marine Division watercraft. None of the Coyle Lines watercraft ever permanently left the original situs in Louisiana except eight barges especially assigned wholly to hauling company coal on the Warrior River in Alabama.

The court below found from these facts that the tugboats and barges of American, Mississippi, and Union were never permanently within the State of Louisiana during the tax years, hence had no tax situs in Louisiana and could not be taxed by that State or by the City of New Orleans. With respect to DeBardeleben, it found that New

Orleans was the home port of its tugboats and barges, from which they operated; that with the exception of the eight barges in Alabama, its watercraft were never permanently away from that city; hence the tax situs was in Louisiana and the tugboats and barges having a tax situs there could be taxed by the City of New Orleans. But the court further found that in assessing the tugboats and barges there had been included in the assessment the eight barges permanently located in Alabama, and that such fact made the city tax against DeBardeleben illegal, null, and void. The correctness of these rulings with respect to the several companies is the sole question before us.

The Louisiana statutes under which the State and the City of New Orleans taxed the tugboats and barges of appellees are set out in a footnote.[3]

Appellants contend that for the watercraft of American, Mississippi, and Union, New Orleans is the terminus into and out of which those lines haul the greater part of the freight handled by them; that the watercraft were loading and unloading in New Orleans throughout the tax years; and that in fact they were within the State of Louisiana more than in any other State. Appellants insist that under the doctrine of Pullman's Palace-Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 36 L.Ed. 613,

Louisiana has the right to tax the craft in question, upon the theory that they have an average continuous presence in Louisiana, the basis of assessment of each appellee being the ratio between the total number of miles of appellee's line in Louisiana and the total number of miles of the entire line. With respect to DeBardeleben, appellants contend that New Orleans, being the home port of its watercraft, was also its permanent tax situs; and that the failure and refusal of that corporation to give the information asked for or to make any assessment return for the tax years involved estopped it to contest the correctness of the assessment made against it. Each of the appellees asserts that, the State of its domicile being elsewhere, it is liable to assessment in Louisiana only upon a showing that the watercraft had a permanent situs within the State during the tax years; and that no such showing was made. DeBardeleben further asserts that the lower court was right in setting aside the assessment made against it upon finding that the value of eight barges in Alabama had been included in the total value from which the local assessments were made.

As stated, the City of New Orleans and the State of Louisiana rely chiefly upon Pullman's Palace-Car Co. v. Pennsylvania, supra, as authority for the assessment against appellees. In that case the

---

[3] Act No. 152 of 1932 provides:

"* * * the rolling stock or movable property of any railroad company, telegraph company, canal company or other transportation company, whose line lies partly within this State and partly within another State, or States, or whose sleeping cars run over any line lying partly within this State or partly within another State or States, shall be assessed in this State in the ratio which the number of miles of the line within the State has to the total number of miles of the entire lines."

Act No. 152 of 1932 was amended by Act No. 59 of 1944. It provides:

"'Movable Personal Property'—All movable and regularly moved locomotives, cars, vehicles, craft, barges, boats and similar things, which have not the character of immovables by their nature or by the disposition of law, either owned or leased for a definite and specific term stated and operated (such, il-

lustratively but not exclusively, as the engines, cars and all rolling stock of railroads; the boats, barges and other water craft and floating equipment of water transportation lines);

* * * * *

"(f). The 'movable personal property' of such persons, firms, or corporations, whose line, route, or system is partly within this State and partly within another state or states, shall be by the Commission valued for the purposes of taxation and by it assessed; * * *

"1. The portion of all of such property of such person, firm or corporation shall be assessed in the State of Louisiana, wheresoever, in the ratio which the number of miles of the line, within the State bears to the total number of miles of the entire line, route or system, here and elsewhere, over which such movable personal property is so operated or so used by such person, firm or corporation."

Supreme Court held that where tangible personal property such as freight and passenger cars are used daily by a railroad over fixed routes in interstate commerce, a State through which the railroad operates although not the State of its domicile may tax such tangible property upon the basis of the ratio between the mileage within the State and the total mileage of the railroad system. But so far as we have been able to find this principle of apportionment has never been applied to watercraft using the high seas or navigable inland waterways. Under the decisions the regular or irregular stops at ports in nondomiciliary States of watercraft moving in interstate commerce do not establish tax situs in such States, and such watercraft remain taxable only by the State of the owner's domicile. Hays v. Pacific Mail S. S. Co., 17 How. 596, 15 L.Ed. 254; St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 20 L.Ed. 192; Morgan v. Parham, 16 Wall. 471, 21 L.Ed. 302; Ayer & Lord Tie Co. v. Kentucky, 202 U.S. 409, 26 S.Ct. 679, 50 L.Ed. 1082, 6 Ann.Cas. 205; Southern Pacific Co. v. Kentucky, 222 U.S. 63, 32 S.Ct. 13, 56 L.Ed. 96; cf. Northwest Airlines, Inc. v. Minnesota, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283, 153 A.L.R. 245. Neither enrollment of a vessel at a particular port, even though the vessel makes regular calls at the port of enrollment, St. Louis v. Wiggins Ferry Co., supra; Ayer & Lord Tie Co. v. Kentucky, supra, nor benefits received at a port, such as fire protection and wharves for loading and unloading accorded to every vessel, of themselves confer the power to tax upon the State of the port. Hays v. Pacific Mail S. S. Co., supra; Southern Pacific Co. v. Kentucky, supra.

▉ The fact that none of the watercraft owned by American, Mississippi, and DeBardeleben has been within the State of Delaware, the State of the owners' domicile, does not of itself control the right of that State to tax the property. Tangible personal property which has not acquired a tax situs elsewhere may be taxed by the State of the owner's domicile although it has never been brought within that State's boundaries. Southern Pacific Co. v. Kentucky, supra. That no tax has been assessed by the State of the owner's domicile

has no bearing upon the right of another State to tax. It is only when the tangible personal property has acquired a tax situs within a State other than the owner's domicile that it may be taxed there. Brown v. Houston, 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257; Old Dominion S. S. Co. v. Virginia, 198 U. S. 299, 25 S.Ct. 686, 49 L.Ed. 1059, 3 Ann.Cas. 1100.

▉ Applying these legal principles to the facts of this case, we are of the opinion that the court below was correct in holding that the tugboats and barges of Mississippi, American, and Union acquired no tax situs in Louisiana, and that no tax could be legally assessed and collected by that State or by the City of New Orleans. We are also of the opinion that the Court below was correct in holding that the tugboats and barges of DeBardeleben, except the eight barges in Alabama, had acquired a tax situs in Louisiana. New Orleans clearly was the home port in DeBardeleben's watercraft. Its watercraft, except the eight barges in Alabama, were properly taxed there. The fact that the amount assessed against DeBardeleben was arrived at by including the value of the eight barges in Alabama is not ground for declaring the assessment against that company void. The taxpayer was called upon to furnish information and make its rendition for each of the tax years. Taking the position that it owed no tax, it refused to furnish any information and thus forced the taxing authority to get its information as best it could. Under the local law, if the taxpayer does not make a return, the taxing authority "shall himself fill out said list from the best information he can obtain." The DeBardeleben Coal Corporation was assessed 25% of the value of its tugs and barges. It urges that this was an excessive assessment, arbitrarily made without information either as to the miles it operated within the State in carrying on its business or as to the value of its properties. The evidence indicates that the taxing authority had little information upon which to act and that the assessments were made from estimates based on meagre and uncertain data. This was due in a large measure to DeBardeleben's refusal to furnish requested information. Instead of acting arbitrarily, the tax-

ing authority obviously made the assessments from the best information it could obtain.

The City of New Orleans has pleaded that the taxpayer, under Act No. 39 of 1922, is estopped to contest the correctness of the assessments because of its failure to make tax renditions on or before June 1 of the tax years. Construing a similar Act, the Supreme Court of Louisiana has held that the estoppel is not applicable where, as here, taxpayer's failure to file a rendition was based on the honest belief that its property was not taxable. Travelers' Insurance Co. v. Board of Assessors et al., 122 La. 129, 47 So. 439, 441, 24 L.R.A., N.S., 388, citing Central of Georgia Ry. Co. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134, 12 Ann.Cas. 463.

In decreeing the assessments against DeBardeleben void, the court below erred. The erroneous inclusion of property in an assessment is ground for reduction, not cancellation. Griggsby Construction Co. v. Freeman, 108 La. 435, 32 So. 399, 58 L.R.A. 349. The DeBardeleben suits in effect are suits for cancellation, not reduction of the assessments, and, though under Louisiana practice, reduction, in the absence of an alternative plea therefor, may not be decreed in a suit for cancellation, Fidelity Mutual Life Insurance Co. v. Fitzpatrick, 125 La. 976, 52 So. 118, 120, 136 Am.St.Rep. 359, a more liberal rule is followed in the federal courts. Under Federal Rules of Civil Procedure, rule 54 (c), 28 U.S.C.A. following section 723c, relief to which a taxpayer is entitled may be granted even though not demanded. The DeBardeleben suits will, therefore, be remanded in order that the court below may ascertain from the present record, or that record supplemented by additional evidence, whether DeBardeleben has paid excess taxes for the tax years, and, if it has, under Act No. 330 of 1938, order a refund of the excess paid, with interest.

The judgments appealed from are affirmed in all these causes except No. 12116 and No. 12124; in those two causes the judgments appealed from are reversed, and the causes are remanded for further proceedings not inconsistent with this opinion.